William TISDALE, Appellant,

v.

The STATE of Texas, Appellee.

No. 743–83.

Court of Criminal Appeals of Texas, En Banc.

June 6, 1984.

On Rehearing March 13, 1985.

Barry L. Elliott, Odessa, for appellant.

William Michael Holmes, Dist. Atty. and David R. Rosado, Asst. Dist. Atty., Odessa, Robert Huttash, State's Atty., and Cathleen Riedel, Asst. State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

THOMAS G. DAVIS, Judge.

After finding the appellant guilty of the offense of aggravated robbery, the jury

assessed punishment at fifteen years. The conviction was affirmed in an unpublished opinion by the El Paso Court of Appeals, Eighth Supreme Judicial District. We granted appellant's petition for discretionary review in order to examine the Court of Appeals' holding that the evidence was sufficient to show that the knife employed during the robbery was a deadly weapon.

The indictment alleged, in pertinent part, that appellant:

"While in the course of committing theft of property owned by Janet Presley, hereafter styled the Complainant, and with intent to obtain and maintain control of the property, using and exhibiting a deadly weapon, namely a knife, did threaten and place Janet Presley in fear of imminent bodily injury and death."

V.T.C.A. Penal Code, Sec. 1.07(a)(11) provides:

"(11) 'Deadly weapon' means:

"(A) a fire arm or anything manifestly designed, made, or adopted for the purpose of inflicting death or serious bodily injury; or

"(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."

A knife is not a deadly weapon, per se. *Blain v. State,* 647 S.W.2d 293 (Tex.Cr. App.1983); *Beller v. State,* 635 S.W.2d 739 (Tex.Cr.App.1982).

The appellant, after carrying items to the cash register in a convenience store, paid for same, and upon the cashier opening the register, appellant placed his left hand over the cash tray. The clerk grabbed his hand and said "no." Appellant replied "yes," and "in his right hand he had a knife." The clerk backed up, appellant removed the money from the register and departed the store. The employee testified "I felt threatened then" and in response to a question as to whether she was in fear of death or serious bodily injury she replied "Yeah, I figured he could have—as a matter of fact, I thought he would have." The knife utilized was introduced into evidence and was shown to have a blade length of two and one-fourth inches.

The State can, without expert testimony, prove a particular knife to be a deadly weapon by showing its size, shape and sharpness, the manner of its use, or intended use and its capacity to produce death or serious bodily injury. *Davidson v. State,* 602 S.W.2d 272 (Tex.Cr.App.1980); *Blain v. State,* supra. In determining the deadliness of a weapon the jury may consider all of the facts of the case, including words spoken by the accused. *Williams v. State,* 575 S.W.2d 30 (Tex.Cr.App.1979).

In *Davidson v. State,* supra, relied on by the dissent for the proposition that "a knife may be shown to be a deadly weapon if its use or intended use during the commission of an offense renders it capable of causing death or serious bodily injury," reversal resulted for failure to prove the knife was a deadly weapon under a factual situation much stronger than the one in the instant case. In *Davidson,* the defendant was observed taking articles from a store without paying for them. When confronted by employees, the defendant turned on one of the employees with an open knife in his hand and said "if you come any closer I am going to cut you." The employee pulled a "cardboard box cutter" out of his pocket and the defendant fled. While the knife was not introduced into evidence, testimony by one employee showed the blade to be "two-and-a-half to three inches long and half an inch wide." Two other employees testified the knife blade was "about four or five inches long" and "about three or four inches long." The confronted employee testified "that he was placed in fear of imminent bodily injury or death." In reversing this Court said, "Even though there was proof of the knife's size, we find as in *Alvarez* [*v. State*] [566 S.W.2d 612 (Tex.Cr.App.1978)] that the evidence in the present case is insufficient to show that the defendant used or intended to use the knife so as to inflict serious bodily harm or death."

No threat of serious bodily injury, express or implied, was made by appellant. Appellant made no gesture with the knife

which would indicate that he was about to use same. The evidence merely reflects that appellant had a knife in his right hand. Cf. *Hubbard v. State*, 579 S.W.2d 930 (Tex. Cr.App.1979); *Hart v. State*, 581 S.W.2d 675 (Tex.Cr.App.1979). To hold that the evidence is sufficient to show deadly weapon is tantamount to elevating a knife to the status of a deadly weapon, per se.

The evidence is insufficient to show that appellant used or exhibited a *deadly* weapon, thereby committing aggravated robbery as alleged in the indictment.

The judgments of the Court of Appeals and the trial court are reversed, and the case is remanded to the trial court with instruction to enter a judgment of acquittal of aggravated robbery.

It is so ordered.

McCORMICK, Judge, dissenting.

Because the record before us does not support the conclusion of the majority, I must vigorously dissent.

The Court of Appeals, in an unpublished, yet well-reasoned opinion, concluded that the evidence was sufficient to show that the knife used by appellant was a deadly weapon. I set forth that opinion:

"This is an appeal from a conviction for aggravated robbery. The jury assessed punishment at fifteen years imprisonment. We affirm.

"The sole ground of error challenges the sufficiency of the evidence on the issue of whether or not the knife employed during the robbery was a deadly weapon. A knife is not a deadly weapon per se, but may be found to be a deadly weapon if its use or manner of intended use during the commission of an offense renders it capable of causing death or serious bodily injury. *Davidson v. State*, 602 S.W.2d 272 (Tex.Cr. App.1980); *Danzig v. State*, 546 S.W.2d 299 (Tex.Cr.App.1977). It is not necessary that wounds be actually inflicted, or express verbal threats be made in conjunction with the display or use of the weapon. *Dominique v. State*, 598 S.W.2d 285 (Tex. Cr.App.1980); *Denham v. State*, 574 S.W.2d 129 (Tex.Cr.App.1978). Its characterization as a deadly weapon may flow from its physical characteristics, the proximity of the parties, and the physical manner of its use. Nor is expert testimony necessary to support a jury's conclusion as to the deadly capacity of such an instrument. *Denham*, supra; *Cruz v. State*, 576 S.W.2d 841 (Tex.Cr.App.1979); *Lewis v. State*, 628 S.W.2d 276 (Tex.App.—Amarillo, 1982).

"In this case, the Appellant entered a grocery store and carried several items to the cashier. When she opened the register to insert his money, he placed his left hand over the cash tray. The clerk grabbed his hand and said, '[n]o.' He replied, '[y]es,' and produced a lock-blade knife with his right hand. The clerk backed up, Appellant removed the money from the drawer and backed out of the store. The knife was recovered and introduced as State's Exhibit A. A photograph appears in the record. An adjacent ruler indicates a blade length of two and one-fourth inches.

"Appellant was within reach of the complainant, thus within range of inflicting injury with the knife. The common experience and understanding of the lay juror is sufficient to assess the ability of a two and one-fourth inch blade to inflict death or serious bodily injury, as defined by Tex. Penal Code sec. 1.07(a)(34). This capacity was clearly utilized by Appellant in his non-verbal communication to the complainant that further efforts to forestall the robbery would result in actual use of the knife. Sufficient evidence was before the jury to justify its conclusion that the knife was a deadly weapon within this context. Tex. Penal Code Ann. secs. 1.07(a)(11)(B) and 29.03 (Vernon 1974). Ground of Error No. One is overruled.

"The judgment is affirmed."

In overruling the Court of Appeals, the majority concludes "[n]o threat of serious bodily injury, express or implied, was made by appellant. Appellant made no gesture with the knife which would indicate that he was about to use same. The evidence merely reflects that appellant had a knife

in his right hand." I ask, what was he going to do with the knife, clean his fingernails while cleaning out the cash register?

During the trial, the complaining witness testified:

"Q. (Prosecutor) Would it be implicit, do you feel like he would have to swing the knife around or come at you with it to feel threatened, or did you feel threatened when he held it up in front of you?

"A. I felt threatened then.

"Q. Threatened of fear of death or serious bodily injury?

"A. Yeah, I figured he could have—as a matter of fact, I thought he would have."

The witness' response clearly indicates that she felt threatened, that she figured the appellant could have caused her death or serious bodily injury, and that he would have done so had she not stepped back and allowed him to have the money.

The case at bar is obviously stronger than the one presented in *Vaughn v. State,* 634 S.W.2d 310 (Tex.Cr.App.1982). The facts of *Vaughn,* which were held sufficient to show that the knife used was a deadly weapon, show:

"... Although the sixty-seven year old complainant, Stanford Phifer, testified, 'No, sir,' when asked if the appellant placed him in fear of imminent bodily injury, he also testified that: 'He [appellant] had his knife.' 'He was holding it like this [indicating].' 'He told me to give him my money.' 'I guess he was going to cut me.' In addition the evidence shows that the complainant felt threatened with bodily injury by the appellant's actions holding the knife, that the appellant made him a little afraid that he might use the knife, that appellant displayed the knife in front of him and he thought appellant would hurt him with the knife if he didn't give him the money."

Common sense and human experience dictate that when a knife is used or exhibited in the manner exemplified by the instant facts, the victim is warranted in his conclusion that the actor fully intends to cause serious bodily injury or death to the victim if the actor's requests are not complied with. Henceforth, potential victims are admonished that they should inquire of a robber who is exhibiting a knife whether the robber intends to cause the victim death or serious bodily injury if the robber's requests are not honored.

To the unrealistic perception of the facts the majority has made, I vigorously dissent.

ONION, P.J., and W.C. DAVIS and CAMPBELL, JJ., join in this dissent.

### OPINION ON STATE'S MOTION
### FOR REHEARING

McCORMICK, Judge.

We granted the State's motion for rehearing to reconsider our previous holding that the evidence was insufficient to show that the knife employed by appellant during the robbery was a deadly weapon.

V.T.C.A., Penal Code, Section 29.03(a)(2), makes robbery under V.T.C.A., Penal Code, Section 29.02, aggravated if the defendant "uses or exhibits a deadly weapon." Appellant, William Tisdale, was indicted by an Ector County grand jury for the aggravated robbery of Janet Presley, the indictment alleging that he "use[d] and exhibit[ed] a deadly weapon, namely, a knife, ..."

The evidence at trial reflected that, in the course of robbing Janet Presley, appellant exhibited a lockblade knife which appears in the record in a photograph, together with a ruler from which these measurements are drawn. The blade of the knife when fully opened and in a locked position has an overall length of two and five-eighths inches from the broken off tip end of the blade to the rounded off portion of the handle. The overall length of the open knife is seven inches. It is obvious from viewing the knife that the blade was originally longer in length but appears to have been broken off at the tip.

When Presley saw appellant's knife, she "just threw up [her] hands and backed off and let [appellant] take the money." Presley also testified:

"Q. * * * [W]ere you frightened when you saw the knife?

"A. Very much, yeah.

"Q. Did you feel threatened?

"A. Yes, I did.

"Q. Were you in fear of imminent bodily harm?

"A. Yeah.

"Q. *Were you in fear of death?* [1]

"A. *Yeah.*

"Q. That wouldn't be hard to understand, would it?

"A. Well, nobody has ever pulled a knife on me before, it was pretty scary.

\* \* \* \* \* \*

"Q. Would it be implicit, do you feel like he would have to swing the knife around or come at you with it to feel threatened, or did you feel threatened when he held it up to front of you?

"A. *I felt threatened then.*

"Q. *Threatened of fear of death or serious bodily injury.?*

"A. *Yeah,* I figured he could have—as a matter of fact, I thought he would have."

On original submission, a majority held:

"No threat of serious bodily injury, express or implied, was made by appellant. Appellant made no gesture with the knife which would indicate that he was about to use same. The evidence merely reflects that appellant had a knife in his right hand (Citations omitted). To hold that the evidence is sufficient to show deadly weapon is tantamount to elevating a knife to the status of a deadly weapon, per se."

*Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), states that, in reviewing the sufficiency of the evidence to sustain a conviction, the reviewing court must ask and answer the question "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) And it is plain from Part IV of the *Jackson* opinion that a trier of facts is entitled to draw reasonable inferences and conclusions from the direct and circumstantial evidence.

This Court has adopted the *Jackson* test. See, e.g., *Houston v. State,* 663 S.W.2d 455 (Tex.Cr.App.1984); *Carlsen v. State,* 654 S.W.2d 444 (Tex.Cr.App.1983); *Freeman v. State,* 654 S.W.2d 450 (Tex.Cr.App.1983); *Denby v. State,* 654 S.W.2d 457 (Tex.Cr.App.1983); and *Wilson v. State,* 654 S.W.2d 465 (Tex.Cr.App.1983). Thus, the sole issue presented in the case at bar is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the knife exhibited by appellant was a "deadly weapon."

The underlying thrust of the original opinion seems to be that, because a knife is not statutorily defined as a deadly weapon under V.T.C.A., Penal Code, Section 1.07(a)(11), a holding that appellant's knife was a deadly weapon would be "tantamount to elevating a knife to the status of a deadly weapon, per se." It is one thing to hold that a knife is a deadly weapon per se, but it is quite another thing to say that, where one person uses or exhibits a knife during the course of a robbery in order to threaten or place another in fear of imminent bodily injury or death, a rational trier of fact could find beyond a reasonable doubt that the knife was a deadly weapon in the manner of its use or intended use.

V.T.C.A., Penal Code, Section 1.07(a)(11)(B), provides:

"Deadly weapon means:

" * * *

"(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."

---

1. Emphasis supplied.

The evidence presented shows that appellant's "use" of the knife was by showing it to his victim. This is established by direct evidence. Appellant had entered the grocery store and carried several items to the cashier. When Presley opened the cash register, appellant placed his left hand over the cash tray. Presley grabbed his hand and said, "No," to which appellant replied, "Yes," and produced the knife here in question. Presley backed up and appellant took the money from the cash tray.

Appellant was within reach of Presley and, as noted *supra*, she was in fear of death and serious bodily injury and thought appellant would have caused same. In other words, the jury was fully warranted in concluding from Presley's testimony that appellant intended to use the knife to cause her serious bodily injury or death. Contrary to the original opinion, appellant's actions were perceived by Presley as an implied threat, and the finder of fact could properly find likewise.

The majority originally cited *Davidson v. State*, 602 S.W.2d 272 (Tex.Cr.App.1980), as authority for reversing appellant's conviction. *Davidson*, however, when compared with the totality of the circumstances here presented, can be distinguished. In *Davidson*, the knife allegedly used to commit the offense was never found nor admitted into evidence. Further, Davidson was never closer to the alleged victim, John Coleman, than five or six feet. The evidence showed that Davidson was observed shoplifting and upon leaving the store was confronted by Coleman and two other store employees. Davidson turned on Coleman with an open knife in his hand and said, "If you come any closer, I'm going to cut you."

Coleman pulled a box cutter from his pocket to defend himself if necessary but Davidson turned and ran. Coleman testified the knife blade was two and one-half to three inches long and that he was placed in fear of imminent bodily injury or death.

Unlike the present case, *Davidson* revolved around an apparent shoplifting, with the defendant displaying the knife only after being confronted outside the store. In the instant case, appellant entered the store, walked around until all other customers had left, and immediately produced his knife prior to committing the theft. Additionally, appellant actually came in physical contact with Presley and held the knife within arm's reach of the victim's face and torso, whereas in *Davidson*, the defendant was never closer to Coleman than five or six feet. Lastly, the knife used in the instant case was produced before the jury, whereas in *Davidson*, the weapon was never recovered.

The evidence found lacking in *Davidson* was the defendant's intent to use the knife, which was apparently demonstrated by the fact he displayed the knife only after being confronted and then immediately fled the scene without ever advancing toward his alleged victim.

The actions of appellant in advancing on Presley and displaying the knife open in his hand are sufficient to show his intent to use the weapon and distinguish this case from *Davidson*.

We conclude that, under the facts presented in this record, a rational trier of fact could find beyond a reasonable doubt that the knife used by appellant was a deadly weapon.

The State's motion for rehearing is granted and the judgments of the trial court and the Court of Appeals are affirmed.

THOMAS G. DAVIS, TEAGUE and MILLER, JJ., dissent.

CLINTON, Judge, concurring.

Proper resolution of the thorny issue presented in the cause has pricked the judgment of past and present members of this Court for a considerable period of time. Though the precise question is whether in the circumstances evidence is sufficient to show that a knife held by appellant was a deadly weapon, the answer depends upon judicial construction of a part of the legislative definition of "deadly weapon" in V.T.C.A. Penal Code, § 1.07(a)(11), *viz:*

" 'Deadly weapon' means:

(A) * * * [1]

(B) anything that in *the manner of its use or intended use is capable* of causing death or serious bodily injury." [2]

With advent of the 1974 penal code, early on the Court focused on the "capability" feature of the definition of deadly weapon in determining sufficiency of evidence, often indicating that opinion evidence may be required to prove up that feature. See generally *Denham v. State,* 574 S.W.2d 129 (Tex.Cr.App.1978) [3] But we came to understand that whether a knife is "capable" enough to constitute a deadly weapon depended more on what the evidence in a given case shows as to "the manner of its use or intended use." See *Blain v. State,* 647 S.W.2d 293 (Tex.Cr.App.1983):

"A knife is not a deadly weapon per se. [Citation omitted.] The State can, without expert testimony, prove a particular knife to be a deadly weapon by showing its size, shape, sharpness, the manner of its use or intended use and its capacity to produce death or serious bodily injury. [Citations omitted.] In determining the deadliness of a weapon the jury may consider all of the facts of a case, including words spoken by the accused. [Citation omitted]." [4]

With that construction of the definition in mind, we turn to the facts in the instant cause.

Janet Lynn Presley was working as cashier in a convenience store located by Andrews Highway in Ector County when at about two thirty of a late January morning appellant came in, walked around and talked a bit about the weather and, after another customer left, approached her counter with two small items; she rang them up for a total of exactly one dollar. Appellant produced a five dollar bill but saying "Wait a minute, reached into the other pocket and extracted a one dollar bill. Presley took the dollar bill, opened the cash register drawer and put the bill in the drawer. Routinely Presley started to close the drawer, but she could not because, as she then saw, appellant's left hand was in it. She "grabbed his left hand" and said, "No." Appellant said, "Yes," and when Presley reacted by looking up she saw a knife in his right hand. She threw up her hands, backed off and "let him take the money." Appellant made off with several twenty dollar bills.

As both opinions on original submission and the current opinion of the Court recount, Presley testified to being "frightened," "feeling threatened," being in "fear of death" and like subjective feelings. However, she also elaborated objective observations. Thus, "he is holding the knife and is looking at me, and he is getting the money out ... [and he] is still looking at me [a]nd he gets the money out ... [and] he backs all the way out of the door." She noticed that "the tip of [the knife] was broken off," just as the one portrayed in a photograph that became State's Exhibit 4 was shown to be. There was blood on his right hand.

On cross-examination at his request, counsel for appellant and Presley demonstrated before the jury how appellant held

1. This part of the definition is not implicated since by now it is axiomatic that a knife is not a deadly weapon per se; e.g., *Davidson v. State,* 602 S.W.2d 272, 273 (Tex.Cr.App.1980); *Danzig v. State,* 546 S.W.2d 299, 301, n. 2 (Tex.Cr.App. 1977).

2. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

3. Indeed, in the instant cause the court of appeals believed that "common experience and understanding of the lay juror is sufficient to assess the ability of a two and one-fourth inch blade to inflict death or serious bodily injury ..."

4. Illustrative of the analysis is *Rodriguez v. State,* 645 S.W.2d 273 (Tex.Cr.App.1982), where the Court examined sufficiency in four aggravated robbery convictions and concluded that while the same knife was not used or exhibited, "the testimony of each victim of or witness to the robberies justifies the inference obviously drawn by the jury from the facts before it that each was a deadly weapon."

the knife in relation to her position.[5] She confirmed that the knife was not "moved, waved or anything like that," but the blade was "sticking up ... or out a little bit. Mostly up, I guess, you know." After counsel sympathized that she "can't be perfect" and reassured her that he was "not asking for degrees," Presley said the blade was "sticking up or maybe leaning over a little bit like that." After more demonstrating, counsel remarked, "So, more or less, I believe what you are telling me is you are kind of facing one another, more or less front to front," and Presley agreed.

On redirect Presley was asked whether when she first saw the knife in his hand appellant "was holding it up, what, in front of himself, as [counsel for appellant] brought out," and she responded, "Not right in front of him," but "[o]ff to the side a little bit." In another demonstration that reveals nothing to us, the jury was shown "how far away" from her appellant was at the time, and iterated that she "felt threatened" when appellant "held it up in front of [her]." [6]

The Court has discerned that the definition of "deadly weapon" in § 1.07(a)(11)(B) "broadens [former] considerations to include 'or its intended use.'" *Denham v. State*, 574 S.W.2d 129, 130 (Tex.Cr.App. 1978). Coupled with all the facts, including words spoken by appellant, the evidence is sufficient to support a jury finding that from the manner of its *intended use* the knife held by appellant was capable of causing death or serious bodily injury.

It is not so much that a robbery victim testifies to having felt threatened, been in fear of death or serious bodily injury and

like subjective conditions, for that goes more to elements of robbery than to definitional ingredients of "deadly weapon." To determine in a given situation whether a knife is a deadly weapon a factfinder should consider its *intended* use from the attitude indicated by the perpetrator. When a suspect acts in a way that shows his purpose is to convey to his victim that he will thwart resistance to a taking by using the knife to harm the person of the victim, he *intends* for the victim "to believe that the knife [is] capable of producing serious bodily injury or death to obtain the money," *Cruz v. State*, 576 S.W.2d 841, 843 (Tex.Cr.App.1979), and the factfinder is warranted in concluding that knife is capable of causing death or serious bodily injury. That the victim later recounts subjective emotions means little more than the suspect accomplished what he intended.[7]

The evidence in this instant cause shows by word and deed that appellant made it abundantly clear to Presley that if she did not release her hold on his left hand in the cash drawer and cease her resistance to his taking the money, he would use the knife to harm her person. Even after she threw up her hands and backed off, he continued to hold the weapon "in front of her face" as he collected the bills and then backed away from the counter and out of the store. Thus the manner of use of this lockblade knife intended by appellant rendered it capable of causing death or serious bodily injury, and the evidence is sufficient to support an implied finding by the jury that it was a deadly weapon.

For those reasons I join the judgment of the Court.

---

5. There are many of the inevitable "like this" and "right there" that do not serve to enlighten a reader of the record, but may have made sense to jurors. See our caution in this respect in *Rodriguez v. State*, supra, at 275, n. 5. Moreover, the volume of the statement of facts said by the index to contain State's exhibits is a copy of the original, where the exhibits must be since they are not in Volume III of our record.

6. While we are unable to say from the record made of those demonstrations, we note that, testifying in his own behalf, appellant admitted taking the currency, but denied that he held the

knife "in front of her face." From that we surmise that jurors saw a demonstration reflecting that appellant had held the knife in front of her face.

7. However, if from actual observations made at the time of the offense, the victim should express an opinion as to the "capability" of the knife exhibited, it has probative value. See *Rodriguez v. State*, supra, at 276 (manager testified that knife was "big enough to cut me up"); see generally *Denham v. State*, supra, at 131.