**Richard Ray WILLIAMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14–90–00290–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

July 11, 1991.

Overruled Aug. 8, 1991.

Discretionary Review Granted Dec. 4, 1991.

Michael B. Charlton, Houston, for appellant.

Michelle Esparza and Margaret Lalk, Bryan, for appellee.

Before PAUL PRESSLER, JUNELL and ELLIS, JJ.

OPINION

JUNELL, Justice.

A jury convicted appellant of the offense of involuntary manslaughter and assessed punishment at seven years imprisonment and a fine in the amount of $5,000. Appellant brings five points of error, alleging that the trial court erred in: (1) admitting into evidence a family photograph of the deceased and her family; (2) permitting the jury to take notes of the court proceedings and allowing them to use those notes in their deliberation; (3) overruling defense counsel's objections to three allegedly improper jury arguments. The third point listed above encompasses appellant's third, fourth, and fifth points of error. We affirm.

On November 25, 1988, an automobile collision occurred in which Theresa Pratt was killed. The head-on collision happened when the truck appellant was driving ran into the car Mrs. Pratt was driving. Mrs. Pratt was pronounced dead at the scene. Appellant appeals his involuntary manslaughter conviction arising from that collision.

In his first point of error appellant asserts that the trial court erred in admitting into evidence a photograph of the deceased and her three children. Appellant objected to the photograph on the basis of relevancy and unfair prejudice. Appellant complains that the State was permitted to show that the death of Mrs. Pratt left the children without a mother and that this was designed to inflame the jury by showing the effect of the offense on the surviving family members. The objection was overruled.

Wendy Pratt, a daughter of the deceased, testified without objection that she was sixteen years old, had a sister, Charity, aged fifteen, and a brother, Aaron, aged thirteen. Wendy Pratt identified State's exhibits one, two and three as pictures of her mother, the deceased. Appellant objected at trial and on appeal contends that State's exhibit number two, a picture of Mrs. Pratt and her three children, should not have been admitted because it was irrelevant and prejudicial.

■ Since Wendy Pratt had testified without objection that her mother had three children, the fact that Mrs. Pratt had children left behind was already before the jury. *Brooks v. State*, 599 S.W.2d 312, 318 (Tex.Crim.App.1979); *David v. State*, 453 S.W.2d 172 (Tex.Crim.App.1970). Thus, the picture introduced nothing regarding the children of the deceased that was not already before the jury. A photograph, if properly authenticated, is competent evidence on any subject of which a witness's description is proper. *Brown v. State*, 696 S.W.2d 913, 914 (Tex.Crim.App.1985); *Alford v. State*, 505 S.W.2d 813 (Tex.Crim. App.1974). Further, there is no error in admitting a photograph where there is testimony admitted without objection showing the same thing. *Brown*, 696 S.W.2d at 914; *Brooks*, 599 S.W.2d at 318. Appellant's first point of error is overruled.

Appellant's second point of error concerns an unsettled area of the law in Texas: juror note-taking. Appellant contends that it was error to allow the jurors to take notes of the proceedings and permit them to take those notes into the jury room during deliberations.

■ This court agrees with appellant and appellee that the leading Texas case on juror note-taking is *Hollins v. State*, 571 S.W.2d 873 (Tex.Crim.App.1978). Unfortunately, the Texas Court of Criminal Appeals failed to provide a bright-line rule concerning the practice:

> After due consideration of the facts in the instant case, we cannot conclude that this is the proper vehicle to lay down a hard and fast rule in criminal cases as to the propriety of jury note-taking and subsequent use in deliberations.

*Hollins*, 571 S.W.2d at 883. Following *Hollins*, the subject of jury note-taking appears to have disappeared from the annals of Texas case law. Thus, no Texas case holds that permitting jurors to take notes or to use those notes during their deliberations is proper or that such practice results in error.

The court in *Hollins* set out an extensive discourse concerning the practice of jury note-taking in other jurisdictions. The

court found that most authorities hold, and the majority view is, that such practice is not jury misconduct. Rather, it is a proper practice and may even be desirable in certain cases.[1]

The history of jury note-taking in Texas provided by the *Hollins* Court is scant, indicates a split of authority between appellate courts, and arises exclusively from civil cases. The Texarkana Court of Appeals admonished a trial court that jury note-taking would be "frowned upon by the courts until such time as the Supreme Court prescribes a rule that all jurors may take notes during the trial and use them during their deliberations." *Guest v. American Petrofina Co.*, 485 S.W.2d 926, 927 (Tex.Civ.App.—Texarkana 1972, no writ). The San Antonio Court of Appeals took a very different view of the procedure in *Manges v. Willoughby*, 505 S.W.2d 379 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.). That court held that the Texas Rules of Civil Procedure contain no prohibition against the practice of jury note-taking. The court stated the practice might even be desirable in complex cases. *Id.* at 383.

The *Willoughby* Court also proposed a procedure for trial judges to follow in order to protect the rights of the parties involved. The court held that jurors should be instructed that their notes are not evidence, and if the jury should disagree as to the testimony of any witness, the testimony should be read back to them by the court reporter. *Id.*

A short three years after the Texarkana Court of Appeals had frowned upon the issue of jury note-taking in *Guest,* that court retreated somewhat from its earlier position. The court took a position that, while use of juror's written notes as evidence or as authority on their face as being a true representation of the testimony in order to persuade other jurors would seem to violate certain rules of procedure, it did not result in any injury to the parties.

*English v. American Foreign Ins. Co.*, 529 S.W.2d 810, 813 (Tex.Civ.App.—Texarkana 1975, no writ).

In their examination of the jury note-taking issue, the Amarillo Court of Appeals did not reach a decision as to whether or not the practice was proper. That court has held only that the taking of notes and their use during deliberation constitutes a problem that should be attacked as juror misconduct. *Twin City Fire Ins. Co. v. Gibson,* 488 S.W.2d 565 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.) (deciding not to rule on the substantive issue of jury note-taking). In the case now before us appellant has chosen not to raise juror misconduct as a point of error, but contends only that the act of note-taking is erroneous.

The Texas Court of Criminal Appeals holding in *Hollins* followed these decisions. As we stated above, *Hollins* does not provide an answer to the question now facing this court. After *Hollins* the issue of jury note-taking disappeared from Texas jurisprudence, and it is possible that attorneys and judges interpret *Hollins* to hold for disapproval of the practice. We, however, do not. The Texas Court of Criminal Appeals did not announce that the process of jury note-taking was forbidden in Texas. That court could have, but chose not to.

The historical basis for prohibiting the practice no longer exists. At common law there was a general prohibition against jurors taking any writing not under seal to the jury room. The Tennessee Supreme Court reasoned that from this doctrine came the rule that jurors were not allowed to take notes. *Watkins v. State,* 216 Tenn. 545, 393 S.W.2d 141 (1965). The basis for this rule was that most jurors were "unlettered" men. *Id.*

Other impediments raised against the practice by a minority of jurisdictions that forbid jury note-taking are: (1) the possibility that jurors who are busy taking notes

1. *See Goodloe v. United States,* 88 U.S.App.D.C. 102, 188 F.2d 621 (1950), *cert. denied,* 342 U.S. 819, 72 S.Ct. 35, 96 L.Ed. 619 (1951); *Toles v. United States,* 308 F.2d 590 (9th Cir.1962), *cert. denied,* 375 U.S. 836, 84 S.Ct. 79, 11 L.Ed.2d 66 (1963); *United States v. Carlisi,* 32 F.Supp. 479 (D.C.N.Y.1940); *United States v. Campbell,* 138 F.Supp. 344 (N.D.Iowa 1956); *Watkins v. State,* 216 Tenn. 545, 393 S.W.2d 141 (1965).

will have their attention diverted from the evidence, and (2) the chance that jurors might consider their notes evidence and place improper importance on them.[2] We find that neither presents an insurmountable problem.

As to the complaint of juror distraction, the trial court is burdened with the duty to see that jurors pay attention. It is not unheard of for jurors to fall asleep while listening to witnesses and attorneys. It cannot be rationally argued that every juror is completely focused on the proceeding at all times, for jurors' minds do sometimes wander. The judge can instruct the jurors that their note-taking should not be such that they fail to pay attention to the evidence. Throughout school careers, the practice of note-taking is a standard. Do we not hear and learn? Perhaps taking notes will keep jurors more focused.

The second concern, that jurors might consider their notes as evidence, is even more easily disposed of. Throughout a trial jurors are bombarded with instructions from the trial court as to what evidence they may consider and for what purpose. Jurors hear improper remarks and view inadmissible evidence, and we believe that an instruction to disregard cures that problem. Trial judges spend much time instructing the jury on the law and its application, and we trust those instructions will be followed and applied. How then can it be logically argued that it would not be possible to instruct the jurors as to the purpose for which they may use their notes? Such an argument would cast doubt on any instruction that the jury is given. As Judge Learned Hand stated:

> The notion has at times been countenanced that jurors should not be allowed to take notes, on the theory that they take on an undue importance when the jury deliberates.... The supposed dangers appear to us far-fetched, if not imaginary.

*United States v. Chiarella,* 184 F.2d 903, 907 (2nd Cir.1950). An instruction that ju-

rors' notes are not to be considered as evidence and, that in the event of disagreement, the jurors should request the disputed testimony be read from the official record should suffice. This instruction is no more complicated than many of those given to juries. To say that our system of justice must rely on what is in the mind of a juror and what he remembers, but not what he puts on paper, is indeed tenuous.

If note-taking by jurors will assist them, the court may permit them to take notes under appropriate conditions and admonitions. The notes can be disclosed only to fellow jurors during deliberations. Appellant's second point of error is overruled.

In his third, fourth, and fifth points of error appellant alleges that the trial court erred in overruling appellant's objections to three different portions of the prosecutor's closing argument. All three complained of arguments address the prosecutor's explanation of the difference between involuntary manslaughter and criminally negligent homicide.

Appellant alleges the prosecutor misstated the law in all three situations. Appellant styles his points in terms of error on the part of the trial court, but his real complaint is improper jury argument by the prosecutor.

Appellant's complaints center on the prosecutor's explanation of criminal negligence, an example of criminal negligence, and the application of the "recklessness" standard of involuntary manslaughter to the appellant's offense. The prosecutor stated:

> Criminal negligence is carelessness. Criminal negligence is backing your car out of Skagg's in the parking lot and forgetting to look back over your shoulder and so you've run into somebody.
>
> \* \* \* \* \* \*
>
> Criminal negligence is driving down Texas Avenue, when fiddling with your radio and so you take your eyes off the traffic and then when the person in front of you

---

**2.** *Cheek v. State,* 35 Ind. 492 (1871); *Thornton v.* *Weaber,* 380 Pa. 590, 112 A.2d 344 (1955).

stops, you don't realize it and you rear-end them.

\* \* \* \* \* \*

He did more than forget to notice something that other people would have. He looked at a situation and thought—I can beat it. And that's what recklessness is. Looking at that situation saying, Ahh, I can get around those cars. Sure there might be some danger, but I can make it.

■ At the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct. *Lewis v. State*, 529 S.W.2d 550 (Tex.Crim.App.1975). This statement describes the mens rea necessary to prove involuntary manslaughter. The prosecutor applied this standard to the facts of the case before the jury in the third portion of the argument listed above. This was not error. The prosecutor simply applied the law to the facts.

The key to criminal negligence is found in the failure of the actor to perceive the risk. *Lewis* at 553. In the first two portions of the argument above the prosecutor put the standard of criminal negligence into laymen's terms for the jury and gave them an example of carelessness. The prosecutor's statements and examples merely paraphrase and explain the court's charge. The State may paraphrase or explain the charge as long as it does not assert legal propositions contrary to that charge. *Jones v. State*, 725 S.W.2d 770 (Tex.App.—Dallas 1987, pet. ref'd). The State did not commit reversible error. Appellant's third, fourth, and fifth points of error are overruled.

The judgment of the trial court is affirmed.