**Finis WILSON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 10–91–037–CR to 10–91–039–CR.**

Court of Appeals of Texas,
Waco.

Jan. 29, 1992.

Discretionary Review Granted
April 29, 1992.

Bruno A. Shimek, Bryan, for appellant.

Bill R. Turner, Dist. Atty., Bryan, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

CUMMINGS, Justice.

Finis Wilson appeals his conviction in three separate causes which were joined for a jury trial. In cause no. 19,786–272, Wilson was found guilty of aggravated robbery; in cause no. 19,789–272, he was

found guilty of aggravated robbery and attempted aggravated robbery; and in cause no. 19,933–272, he was found guilty of robbery. He contends on appeal that there was insufficient evidence to support the deadly weapon findings in the two aggravated robbery convictions and that the court's charge relating to attempted aggravated robbery failed to require a deadly weapon finding. He also contends that the court erred in allowing jurors to ask questions of the witnesses and to take notes made during the trial into the jury room for consideration during deliberation. We will affirm the judgment in all three causes.

## THE DEADLY WEAPON FINDINGS

Wilson complains that there is insufficient evidence to support the deadly weapon findings implicit in the two aggravated robbery convictions. A deadly weapon is defined by section 1.07(a)(11) of the Texas Penal Code:

"Deadly weapon" means:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

TEX.PENAL CODE ANN. § 1.07(a)(11) (Vernon 1974).

■ The court's charge to the jury incorporated paragraph (B) as the definition of a deadly weapon. Although a knife is not usually a deadly weapon *per se* under paragraph (A), it may be shown to be a deadly weapon under paragraph (B) by showing the manner of its use, its size and shape, and its capacity to produce death or serious bodily injury. *Thomas v. State*, 821 S.W.2d 616, (Tex.Crim.App.1991); *Hawkins v. State*, 605 S.W.2d 586, 588 (Tex.Crim.App. [Panel Op.] 1980). In *Hernandez v. State*, 649 S.W.2d 720, 722 (Tex. App.—Amarillo 1982, no pet.), the Amarillo Court of Appeals held that, when a weapon was not actually used to cause death or serious bodily injury, two elements must be proved to support a deadly weapon finding

under paragraph (B). First, the item used must be capable of causing the requisite harm. *Id.* The capability of the weapon may be apparent from the nature of the weapon and may be established by lay testimony. *Id.* Second, there must be evidence that the weapon was displayed or used in a manner indicating an intent to cause death or serious bodily injury. *Id.* Actual wounds, however, are not a necessary prerequisite for an object to be a deadly weapon by its manner and use. *Dominique v. State*, 598 S.W.2d 285, 286 (Tex.Crim.App. [Panel Op.] 1980).

### The Small Pocketknife

■ In cause no. 19,786–272, the store clerk testified that Wilson was holding a small pocketknife in his hand when he said, "Pop the drawer and give me your money." Although the clerk testified that Wilson did not threaten her with the knife, she acknowledged that she had given him the money because he had a knife. She also testified that, although she was not fearful for her safety, she was not "going to ask for trouble." Detective Fickey, who investigated the robberies, testified that he had seen injuries caused by pocketknives and that they were capable of causing death or serious bodily injury. On cross-examination, Wilson admitted to holding a knife on the counter and acknowledged that showing the knife to the clerk might have convinced her that he was serious.

### The Serrated Steak Knife

In cause no. 19,789–272, the evidence reveals that the knife carried by Wilson was the size of a steak knife and had a serrated edge; that when the store clerk did not respond to Wilson's initial demand for money he threatened the clerk by holding the knife up; that the clerk believed the knife was capable of causing her serious injury; and that she gave him the money because "there was no way that [she] was going to endanger [her] life." Detective Fickey also testified that he had seen injuries caused by household steak knives and that they were capable of causing death or serious bodily injury.

Both robberies in this case are factually similar to that in *Tisdale v. State*, 686 S.W.2d 110 (Tex.Crim.App.1985) (on rehearing). The evidence in that case reflected that the knife blade was two and five-eighths inches long. *Id.* at 113. As in this case, the evidence presented in *Tisdale* demonstrated that the defendant's use of the knife was by merely showing it to his victim. *Id.* at 115. The clerk in *Tisdale* testified that when the defendant displayed the knife, she backed up and allowed the defendant to take the money from the register. *Id.* at 114. She also testified that she felt threatened by the knife displayed by the defendant. *Id.* According to the court in *Tisdale*, the actions of the defendant in advancing on the clerk and displaying the open knife in his hand were sufficient to show his intent to use the weapon. *Id.* at 115.

In this case, the clerk whom Wilson threatened with a steak knife testified that she was concerned about the possibility of being harmed. Although the clerk whom Wilson threatened with the pocketknife testified that she was not fearful for her safety, she also testified that she gave him the money because he had a knife. The clerk's response demonstrates that she understood Wilson's implied threat to use the knife if she did not respond to his demand for the money. *Cf. Vaughn v. State*, 634 S.W.2d 310, 311–12 (Tex.Crim.App. [Panel Op.] 1982) (although complaining witness testified that he was not placed "in fear of imminent bodily injury," he also testified that he thought the defendant meant business when he displayed a knife; the court found the evidence sufficient to support a conviction for aggravated robbery). We find that the evidence is sufficient to support findings that both the pocketknife and the steak knife were *used or exhibited* as deadly weapons. We overrule point of error one in cause no. 19,786–272 and point of error one in cause no. 19,789–272.

## THE CHARGE

■ Wilson complains that the charge in count two of cause no. 19,789–272 was fundamentally defective because it failed to require the jury to find that the knife exhibited in the attempted aggravated robbery was a deadly weapon. The court's charge in count two provided:

Now if you find from the evidence beyond a reasonable doubt that on or about August 31, 1990 in Brazos County, Texas the defendant, FINIS WILSON, with the specific intent to commit the offense of Aggravated Robbery of Michael Holiday, did intentionally do an act, to-wit: threaten Michael Holiday with a knife, and you further find that this act amounted to more than mere preparation, that tended but failed to effect the commission of the offense intended, then you will find the defendant guilty of Attempted Aggravated Robbery as charged in Count Two of the indictment.

A criminal attempt to commit an aggravated offense is defined by section 15.01 of the Texas Penal Code as follows:

(a) A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended.

(b) If a person attempts an offense that may be aggravated, his conduct constitutes an attempt to commit the aggravated offense if an element that aggravates the offense accompanies the attempt.

TEX.PENAL CODE ANN. § 15.01 (Vernon Supp.1992).

The use or exhibition of a deadly weapon is an element that aggravates the offense of robbery. *Id.* at § 29.03(a)(2). Accordingly, paragraph one of the charge stated that "The offense is aggravated robbery if the person committing robbery uses or exhibits a deadly weapon." The charge also properly defined a deadly weapon and instructed the jury on an attempted offense as follows:

A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends, but fails, to effect the commission of the offense in-

tended. This is an attempt to commit an offense.

Although the jury found that Wilson attempted to commit the offense of robbery and that he threatened the clerk with a knife, the charge did not require the jury to find that Wilson used or exhibited a deadly weapon. Wilson argues that the definition of aggravated robbery in the charge did not satisfy the requirement of section 15.01(b) of the Texas Penal Code. In order for the jury to find that Wilson had the intent to commit aggravated robbery, it was required to find that he had the specific intent to use or exhibit a deadly weapon. However, because section 15.01(b) requires the aggravating element to accompany the attempt, to support a conviction for an attempt to commit an aggravated offense, the jury must find more than an intent to commit the aggravating element. *See id.* at § 15.01(b).

Nevertheless, in this case, the act that "amounted to more than mere preparation," which the jury found in support of the attempted robbery finding, was that Wilson threatened the store clerk with a knife. As previously discussed, one of the ways in which a knife may be shown to be a deadly weapon is through the "manner of its use or *intended* use." *See id.* at § 1.07(a)(11)(B) (emphasis added). By finding that Wilson intended to use or exhibit a deadly weapon, the jury sufficiently satisfied the elements of a deadly weapon finding with regard to the knife that he used to threaten the store clerk.

If there is any ambiguity in the charge, it arises from the possibility that the deadly weapon which Wilson intended to use was not the same weapon as the knife that he in fact used or exhibited to threaten the store clerk. However, Wilson never objected to an ambiguity in the charge, if in fact one existed in the minds of the jury. Therefore, any error caused by such an ambiguity would require a reversal "only if the error is so egregious and created such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.' " *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (on rehearing). At tri-

al, Wilson admitted to holding a knife with an inch-and-a-half to two-inch blade where the store clerk could see it, and there was no evidence that he intended to use any other weapon during the attempted robbery. In view of the entire jury charge and the state of the evidence, we find that any error in the charge was not so harmful as to require reversal. *See id.* at 172. We overrule point of error two in cause no. 19,789–272.

## THE JURORS' QUESTIONS

■ Wilson complains that the trial court erred by allowing the jurors to ask questions of the witnesses. Under the procedure used by the trial court, questions from jurors are submitted to the court in writing and reviewed by counsel before the court rules on their propriety and admissibility.

In *Morrison v. State*, 815 S.W.2d 766, 769 (Tex.App.—Waco 1991, pet. granted), we declined to ban the practice of allowing jurors to ask questions, but held that "the inherent danger that the state will use a juror's question to gain an unfair advantage in the presentation of its case requires the closest scrutiny of the trial court's discretion whenever it allows jurors to pose questions to witnesses." Therefore, we must determine if the prosecutor gained an unfair advantage as a result of the questions submitted to the court by the jurors.

After the testimony of Michelle Pierce, one of the store clerks, a juror submitted a question in writing to the court. Although Wilson objected to the procedure, his attorney stated at trial that he had no objection to the particular question asked. Therefore, the court read the following question to the witness: "What time did the robbery occur?" The witness responded that it was approximately 6:30 or 6:45 in the morning, and neither party asked any follow-up questions on the matter. Wilson acknowledged in his brief on appeal that the question was inconsequential, and we find that no unfair advantage was gained by the prosecutor from the juror's question.

Wilson's hearsay objection to another one of the jurors' questions was sustained

by the court and the question was excluded. Although Wilson repeated his objection to the procedure in general, he made no objection that the prosecutor gained an unfair advantage because of the question asked. In each of the remaining instances in which jurors submitted written questions to the court, either the court excluded the questions though Wilson made no objection, or he repeated his general objection while expressly stating that he had no objection to the specific questions and the questions were read to the witness. Because we have previously declined to ban the practice of allowing jurors to ask questions, Wilson's repeated objections to the procedure in general provide no basis for reversal.

Wilson never complained that, although several questions were excluded by the court, the prosecutor was "tipped off" by the juror's questions as in *Morrison*. *See id.* We stated in *Morrison* that the practice of allowing jurors to question the witnesses must be carefully monitored for an abuse of discretion. *Id.* at 768. However, because Wilson objected only to the procedure in general without pointing out how the prosecutor might have gained an unfair advantage, we find no abuse of discretion. We overrule point of error two in cause no. 19,786–272, point of error three in cause no. 19,789–272, and point of error one in cause no. 19,933–272.

## THE JURORS' NOTES

Wilson complains that the court erred by allowing jurors to take notes made during the trial into the jury room for consideration during deliberations. In *Hollins v. State*, 571 S.W.2d 873, 880 (Tex.Crim.App. 1978), the Texas Court of Criminal Appeals found that most authorities hold, and the majority view is, that the use of trial notes by the jury is not jury misconduct. However, the court failed to provide a rule concerning whether the practice was improper:

> After due consideration of the facts in the instant case, we cannot conclude that this is the proper vehicle to lay down a hard and fast rule in criminal cases as to the propriety of jury note-taking and subsequent use in deliberations.

*Id.* at 883.

Wilson's complaint is similar to that made in another case arising out of the same district court. *See Williams v. State*, 814 S.W.2d 163 (Tex.App.—Houston [14th Dist.] 1991, pet. granted). Wilson has chosen not to raise jury misconduct as a point of error, but contends only that the act of note-taking is erroneous. *See id.* at 165. As the court in *Williams* pointed out:

> The historical basis for prohibiting the practice no longer exists. At common law there was a general prohibition against jurors taking any writing not under seal to the jury room. The Tennessee Supreme Court reasoned that from this doctrine came the rule that jurors were not allowed to take notes. *Watkins v. State*, 216 Tenn. 545, 393 S.W.2d 141 (1965). The basis for this rule was that most jurors were "unlettered" men. *Id.*

*Williams*, 814 S.W.2d at 165.

Following the reasoning of the court in *Williams*, we hold that, if note-taking by jurors will assist them, the court may permit them to take notes under appropriate conditions and admonitions. *See id.* at 166. If jurors become too busy taking notes that their attention is diverted from the evidence, the court can instruct the jurors that their note-taking should not be such that they fail to pay attention to the evidence. *Id.* Furthermore, to prevent the jurors from placing improper importance on their notes, a court can instruct the jury that jurors' notes are not to be considered as evidence and, that in the event of disagreement, the jurors should request the disputed testimony be read from the official record. *Id.* We overrule point of error three in cause no. 19,786–272, point of error four in cause no. 19,789–272, and point of error two in cause no. 19,933–272.

The judgments are affirmed.