IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00142-CR

 

Carlton Frank Cummins,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 



From the 40th District Court

Ellis County, Texas

Trial Court No. 25748CR

 



MEMORANDUM  Opinion










 

      Cummins appeals the revocation of his
community supervision for third-degree-felony failure to register as a sex
offender.  See Tex. Code Crim.
Proc. Ann. art. 62.10(a), (b)(2) (Vernon 2004-2005).  We affirm.

      In Cummins’s one issue, he contends that
the trial court abused its discretion in revoking Cummins’s community
supervision because of Cummins’s failure to pay his community supervision fee,
court costs, appointed attorney fees, and fine.

      An “appellant’s plea of true, standing
alone, is sufficient to support the revocation of probation.”  Cole v.
State, 578 S.W.2d 127, 128 (Tex. Crim. App. [Panel Op.] 1979); accord
Aldredge v. State, 703 S.W.2d 354, 355 (Tex. App.—Waco 1985, no pet.). 
Moreover, “one sufficient ground for revocation will support the court’s order
to revoke probation.”  Moore v. State, 605 S.W.2d 924, 926 (Tex. Crim.
App. [Panel Op.] 1980); accord Maxey v. State, 49 S.W.3d 582, 584 (Tex.
App.—Waco 2001, pet. ref’d).  Cummins pleaded true to the State’s allegations
that he failed to pay community supervision and other fees and to perform
community service as ordered by the court as a condition of community
supervision, and that he committed a new offense of failure to register as a
sex offender.  Besides finding that Cummins failed to pay his fees, the trial
court also found that Cummins violated the other conditions of community
supervision as alleged in the motion to revoke. 

      In any case, “[i]n a community supervision
revocation hearing at which it is alleged only that the defendant violated the
conditions of community supervision by failing to pay compensation paid to
appointed counsel, community supervision fees, [and] court costs,
. . . the inability of the defendant to pay as ordered by the judge
is an affirmative defense to revocation, which the defendant must prove by a
preponderance of evidence.”  Tex. Code
Crim. Proc. Ann. art. 42.12, § 21(c) (Vernon Supp. 2004-2005); see
Medlock v. State, 718 S.W.2d 285, 286 (Tex. Crim. App. 1986) (per curiam); Maxey,
49 S.W.3d at 584.  Cummins did not raise the inability to pay at trial.

      Accordingly, the trial court did not abuse
its discretion in revoking Cummins’s community supervision.  We overrule
Cummins’s issue.

      Having overruled Cummins’s
sole issue, we affirm.

TOM GRAY

Chief
Justice

Before Chief Justice Gray,

      Justice Vance, and

      Justice
Reyna

      (Justice
Vance concurring with note)*

Affirmed

Opinion
delivered and filed September 21, 2005

Do
not publish

[CR25]

  *  “(Justice Vance concurs with a note: I
believe that we owe it to the litigants, the higher courts, the Bench and Bar,
and the public generally to provide more of the facts and our analysis in
memorandum opinions.  Although I concur in the judgment, I cannot join this
opinion.)”






ify; line-height: 0.388889in">Tex. Penal Code Ann. § 1.07(a)(11) (Vernon 1974).
          The court's charge to the jury incorporated paragraph (B) as the definition of a deadly
weapon. Although a knife is not usually a deadly weapon per se under paragraph (A), it may be
shown to be a deadly weapon under paragraph (B) by showing the manner of its use, its size and
shape, and its capacity to produce death or serious bodily injury. Thomas v. State, No. 1243-90,
slip op. at 4-8 (Tex. Crim. App. December 11, 1991); Hawkins v. State, 605 S.W.2d 586, 588
(Tex. Crim. App. [Panel Op.] 1980). In Hernandez v. State, 649 S.W.2d 720, 722 (Tex.
App.—Amarillo 1982, no pet.), the Amarillo Court of Appeals held that, when a weapon was not
actually used to cause death or serious bodily injury, two elements must be proved to support a
deadly weapon finding under paragraph (B). First, the item used must be capable of causing the
requisite harm. Id. The capability of the weapon may be apparent from the nature of the weapon
and may be established by lay testimony. Id. Second, there must be evidence that the weapon was
displayed or used in a manner indicating an intent to cause death or serious bodily injury. Id. 
Actual wounds, however, are not a necessary prerequisite for an object to be a deadly weapon by
its manner and use. Dominique v. State, 598 S.W.2d 285, 286 (Tex. Crim. App. [Panel Op.]
1980).
The Small Pocketknife
          In cause no. 19,786-272, the store clerk testified that Wilson was holding a small
pocketknife in his hand when he said, "Pop the drawer and give me your money." Although the
clerk testified that Wilson did not threaten her with the knife, she acknowledged that she had given
him the money because he had a knife. She also testified that, although she was not fearful for
her safety, she was not "going to ask for trouble." Detective Fickey, who investigated the
robberies, testified that he had seen injuries caused by pocketknives and that they were capable
of causing death or serious bodily injury. On cross-examination, Wilson admitted to holding a
knife on the counter and acknowledged that showing the knife to the clerk might have convinced
her that he was serious.
The Serrated Steak Knife
          In cause no. 19,789-272, the evidence reveals that the knife carried by Wilson was the size
of a steak knife and had a serrated edge; that when the store clerk did not respond to Wilson's
initial demand for money he threatened the clerk by holding the knife up; that the clerk believed
the knife was capable of causing her serious injury; and that she gave him the money because
"there was no way that [she] was going to endanger [her] life." Detective Fickey also testified that
he had seen injuries caused by household steak knives and that they were capable of causing death
or serious bodily injury.
          Both robberies in this case are factually similar to that in Tisdale v. State, 686 S.W.2d 110
(Tex. Crim. App. 1985) (on rehearing). The evidence in that case reflected that the knife blade
was two and five-eighths inches long. Id. at 113. As in this case, the evidence presented in
Tisdale demonstrated that the defendant's use of the knife was by merely showing it to his victim. 
Id. at 115. The clerk in Tisdale testified that when the defendant displayed the knife, she backed
up and allowed the defendant to take the money from the register. Id. at 114. She also testified
that she felt threatened by the knife displayed by the defendant. Id. According to the court in
Tisdale, the actions of the defendant in advancing on the clerk and displaying the open knife in his
hand were sufficient to show his intent to use the weapon. Id. at 115.
          In this case, the clerk whom Wilson threatened with a steak knife testified that she was
concerned about the possibility of being harmed. Although the clerk whom Wilson threatened
with the pocketknife testified that she was not fearful for her safety, she also testified that she gave
him the money because he had a knife. The clerk's response demonstrates that she understood
Wilson's implied threat to use the knife if she did not respond to his demand for the money. Cf.
Vaughn v. State, 634 S.W.2d 310, 311-12 (Tex. Crim. App. [Panel Op.] 1982) (although
complaining witness testified that he was not placed "in fear of imminent bodily injury," he also
testified that he thought the defendant meant business when he displayed a knife; the court found
the evidence sufficient to support a conviction for aggravated robbery). We find that the evidence
is sufficient to support findings that both the pocketknife and the steak knife were used or
exhibited as deadly weapons. We overrule point of error one in cause no. 19,786-272 and point
of error one in cause no. 19,789-272.
THE CHARGE
          Wilson complains that the charge in count two of cause no. 19,789-272 was fundamentally
defective because it failed to require the jury to find that the knife exhibited in the attempted
aggravated robbery was a deadly weapon. The court's charge in count two provided:
Now if you find from the evidence beyond a reasonable doubt that on or about
August 31, 1990 in Brazos County, Texas the defendant, FINIS WILSON, with the
specific intent to commit the offense of Aggravated Robbery of Michael Holiday, did
intentionally do an act, to-wit: threaten Michael Holiday with a knife, and you further find
that this act amounted to more than mere preparation, that tended but failed to effect the
commission of the offense intended, then you will find the defendant guilty of Attempted
Aggravated Robbery as charged in Count Two of the indictment.

          A criminal attempt to commit an aggravated offense is defined by section 15.01 of the
Texas Penal Code as follows:
(a) A person commits an offense if, with specific intent to commit an offense, he
does an act amounting to more than mere preparation that tends but fails to effect the
commission of the offense intended.
 
(b) If a person attempts an offense that may be aggravated, his conduct constitutes
an attempt to commit the aggravated offense if an element that aggravates the offense
accompanies the attempt.

Tex. Penal Code Ann. § 15.01 (Vernon Supp. 1992).
          The use or exhibition of a deadly weapon is an element that aggravates the offense of
robbery. Id. at § 29.03(a)(2). Accordingly, paragraph one of the charge stated that "The offense
is aggravated robbery if the person committing robbery uses or exhibits a deadly weapon." The
charge also properly defined a deadly weapon and instructed the jury on an attempted offense as
follows:
A person commits an offense if, with specific intent to commit an offense, he does
an act amounting to more than mere preparation that tends, but fails, to effect the
commission of the offense intended. This is an attempt to commit an offense.

          Although the jury found that Wilson attempted to commit the offense of robbery and that
he threatened the clerk with a knife, the charge did not require the jury to find that Wilson used
or exhibited a deadly weapon. Wilson argues that the definition of aggravated robbery in the
charge did not satisfy the requirement of section 15.01(b) of the Texas Penal Code. In order for
the jury to find that Wilson had the intent to commit aggravated robbery, it was required to find
that he had the specific intent to use or exhibit a deadly weapon. However, because section
15.01(b) requires the aggravating element to accompany the attempt, to support a conviction for
an attempt to commit an aggravated offense, the jury must find more than an intent to commit the
aggravating element. See id. at § 15.01(b).
          Nevertheless, in this case, the act that "amounted to more than mere preparation," which
the jury found in support of the attempted robbery finding, was that Wilson threatened the store
clerk with a knife. As previously discussed, one of the ways in which a knife may be shown to
be a deadly weapon is through the "manner of its use or intended use." See id. at § 1.07(a)(11)(B)
(emphasis added). By finding that Wilson intended to use or exhibit a deadly weapon, the jury
sufficiently satisfied the elements of a deadly weapon finding with regard to the knife that he used
to threaten the store clerk.
          If there is any ambiguity in the charge, it arises from the possibility that the deadly weapon
which Wilson intended to use was not the same weapon as the knife that he in fact used or
exhibited to threaten the store clerk. However, Wilson never objected to an ambiguity in the
charge, if in fact one existed in the minds of the jury. Therefore, any error caused by such an
ambiguity would require a reversal "only if the error is so egregious and created such harm that
he ‛has not had a fair and impartial trial’—in short ‛egregious harm.’" See Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1985) (on rehearing). At trial, Wilson admitted to holding
a knife with an inch-and-a-half to two-inch blade where the store clerk could see it, and there was
no evidence that he intended to use any other weapon during the attempted robbery. In view of
the entire jury charge and the state of the evidence, we find that any error in the charge was not
so harmful as to require reversal. See id. at 172. We overrule point of error two in cause no.
19,789-272.
THE JURORS' QUESTIONS
          Wilson complains that the trial court erred by allowing the jurors to ask questions of the
witnesses. Under the procedure used by the trial court, questions from jurors are submitted to the
court in writing and reviewed by counsel before the court rules on their propriety and
admissibility.
          In Morrison v. State, 815 S.W.2d 766, 769 (Tex. App.—Waco 1991, pet. granted), we
declined to ban the practice of allowing jurors to ask questions, but held that "the inherent danger
that the state will use a juror's question to gain an unfair advantage in the presentation of its case
requires the closest scrutiny of the trial court's discretion whenever it allows jurors to pose
questions to witnesses." Therefore, we must determine if the prosecutor gained an unfair
advantage as a result of the questions submitted to the court by the jurors.
          After the testimony of Michelle Pierce, one of the store clerks, a juror submitted a question
in writing to the court. Although Wilson objected to the procedure, his attorney stated at trial that
he had no objection to the particular question asked. Therefore, the court read the following
question to the witness: "What time did the robbery occur?" The witness responded that it was
approximately 6:30 or 6:45 in the morning, and neither party asked any follow-up questions on
the matter. Wilson acknowledged in his brief on appeal that the question was inconsequential, and
we find that no unfair advantage was gained by the prosecutor from the juror's question. 
          Wilson's hearsay objection to another one of the jurors' questions was sustained by the
court and the question was excluded. Although Wilson repeated his objection to the procedure in
general, he made no objection that the prosecutor gained an unfair advantage because of the
question asked. In each of the remaining instances in which jurors submitted written questions to
the court, either the court excluded the questions though Wilson made no objection, or he repeated
his general objection while expressly stating that he had no objection to the specific questions and
the questions were read to the witness. Because we have previously declined to ban the practice
of allowing jurors to ask questions, Wilson's repeated objections to the procedure in general
provide no basis for reversal. 
          Wilson never complained that, although several questions were excluded by the court, the
prosecutor was "tipped off" by the juror's questions as in Morrison. See id. We stated in
Morrison that the practice of allowing jurors to question the witnesses must be carefully monitored
for an abuse of discretion. Id. at 768. However, because Wilson objected only to the procedure
in general without pointing out how the prosecutor might have gained an unfair advantage, we find
no abuse of discretion. We overrule point of error two in cause no. 19,786-272, point of error
three in cause no. 19,789-272, and point of error one in cause no. 19,933-272.
THE JURORS' NOTES
          Wilson complains that the court erred by allowing jurors to take notes made during the trial
into the jury room for consideration during deliberations. In Hollins v. State, 571 S.W.2d 873,
880 (Tex. Crim. App. 1978), the Texas Court of Criminal Appeals found that most authorities
hold, and the majority view is, that the use of trial notes by the jury is not jury misconduct. 
However, the court failed to provide a rule concerning whether the practice was improper:
After due consideration of the facts in the instant case, we cannot conclude that this
is the proper vehicle to lay down a hard and fast rule in criminal cases as to the propriety
of jury note-taking and subsequent use in deliberations.

Id. at 883.
          Wilson's complaint is similar to that made in another case arising out of the same district
court. See Williams v. State, 814 S.W.2d 163 (Tex. App.—Houston [14th Dist.] 1991, pet.
granted). Wilson has chosen not to raise jury misconduct as a point of error, but contends only
that the act of note-taking is erroneous. See id. at 165. As the court in Williams pointed out:
The historical basis for prohibiting the practice no longer exists. At common law
there was a general prohibition against jurors taking any writing not under seal to the jury
room. The Tennessee Supreme Court reasoned that from this doctrine came the rule that
jurors were not allowed to take notes. Watkins v. State, 216 Tenn. 545, 393 S.W.2d 141
(1965). The basis for this rule was that most jurors were "unlettered" men. Id.

Williams, 814 S.W.2d at 165.
          Following the reasoning of the court in Williams, we hold that, if note-taking by jurors will
assist them, the court may permit them to take notes under appropriate conditions and
admonitions. See id. at 166. If jurors become too busy taking notes that their attention is diverted
from the evidence, the court can instruct the jurors that their note-taking should not be such that
they fail to pay attention to the evidence. Id. Furthermore, to prevent the jurors from placing
improper importance on their notes, a court can instruct the jury that jurors' notes are not to be
considered as evidence and, that in the event of disagreement, the jurors should request the
disputed testimony be read from the official record. Id. We overrule point of error three in cause
no. 19,786-272, point of error four in cause no. 19,789-272, and point of error two in cause no.
19,933-272.
          The judgments are affirmed.
 
                                                                                 BOBBY L. CUMMINGS
                                                                                 Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed January 29, 1992
Publish