# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-01-00732-CR

**Raymond Navarro, AKA Raynaldo Navarro, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT NO. 2010978, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

After a bench trial, appellant Raynaldo Navarro was convicted of the offense of aggravated assault and sentenced to twenty-five years= imprisonment. *See* Tex. Pen. Code Ann. ' 22.02(a) (West 1994).[1] In two points of error, Navarro challenges the legal sufficiency of the evidence. We will affirm the judgment of conviction.

### BACKGROUND

---

[1] Because of Navarro=s prior convictions, twenty-five years was the minimum term for which he could be sentenced if convicted of this offense.

Navarro lived in his aunt=s home with his girlfriend, Mona Lisa Gonzales.  One evening in July 2001, Gonzales was waiting for Navarro to pick her up at the H-E-B grocery store  where she had just finished her work shift.  When he failed to arrive on time, she walked to a nearby bus stop.  Navarro finally arrived on foot, drunk, and possibly Ahigh@ on crack cocaine.  Gonzales also noticed that Navarro was wearing a pinky ring that she had never seen before.  An argument ensued.  Gonzales told Navarro she wanted to end the relationship; he told her that she was coming home with him.  Gonzales began to run in the direction of the H-E-B store where a police officer was  on duty, but Navarro caught up with her before she got there.  Gonzales testified that he grabbed her, shoved her against the wall and choked her, and then pulled a knife from his pocket and held it against her, yelling that she was going home with him.  Employees inside the store witnessed the assault and called the police.  When a store employee notified Gonzales that the police were on their way, Navarro fled; the police subsequently arrested him at his aunt=s home.

Nichole Postelle, the employee who called the police, testified that she saw something in Navarro=s hand that looked like either a box cutter or a knife; she did not see precisely what the object was.  The police officers did not find a knife on Navarro when he was arrested and they did not look for one at the house.  Austin Police Department Officer Reginald Parker testified that Gonzales described the knife to him.  Based on that description and his experience, he testified that he considered the knife to be a deadly weapon.  Gonzales testified that after the attack she found the knife under a sofa cushion in the home of Navarro=s aunt.  She testified that she did not think to call the police to let them know she had found it, and the knife later disappeared.

2

## DISCUSSION

In his first point of error, Navarro challenges the legal sufficiency of the evidence.[2] In his second point of error, he contends that the trial court erred in denying his motion for instructed verdict. A challenge to the trial court=s ruling on a motion for instructed verdict is a challenge to the legal sufficiency of the evidence. *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997). Accordingly, we will review both points of error as a single legal sufficiency point. **When the court reviews the legal sufficiency of a verdict, it looks at the relevant evidence in the light most favorable to the verdict to determine whether a rational finder of fact could have found the** essential **elements of the crime beyond a reasonable doubt.** *Jackson v. Virginia,* **443 U.S. 307, 319 (1979);** *Johnson v. State***, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The trier of fact is entitled to resolve any conflicts in the evidence, to evaluate the credibility of witnesses, and to determine the weight to be given any particular evidence.** *See Jones v. State***, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).** Any inconsistencies in the evidence should be resolved in favor of the verdict. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).

---

[2] Navarro does not specify in his brief whether he is challenging the legal or factual sufficiency of the evidence, but he cites the standard for legal sufficiency only. Moreover, all of the decisions to which he cites predate *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996), which recognized factual

sufficiency as a review standard. Therefore, we will construe his challenge as one of legal sufficiency. *See Kingsbury v. State*, 14 S.W.3d 405, 408 (Tex. App.CWaco 2000, no pet.).

Navarro contends that because of inconsistencies in the testimony of the State=s witnesses, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. The indictment charged Navarro with aggravated assault by use of a deadly weapon. The elements of assault are (1) intentionally or knowingly (2) threatening another with imminent bodily injury. *See* Tex. Pen. Code Ann. ' 22.01. If a deadly weapon is used or exhibited during the commission of an assault, a defendant can be convicted of aggravated assault. *See id.* ' 22.02. Navarro does not identify the specific elements for which he asserts there is insufficient evidence; rather, he points to certain parts of Gonzales=s testimony that he alleges are inconsistent. Most of the testimony to which Navarro directs our attention concerns immaterial matters. For example, Navarro points to Gonzales=s testimony describing the altercation. Gonzales stated that appellant did not touch her at the bus station but only in front of the auto parts store. When asked on cross-examination whether Gonzales told him that Navarro grabbed her at the bus stop and in front of the auto parts store, Officer Parker answered, AI think so.@ Appellant asserts that Gonzales=s testimony is inconsistent with that of Officer Parker=s. As Gonzales explained, however, she told the police officer that they began arguing at the bus stop and the altercation continued when Navarro chased her to an auto parts store. The testimony is not inconsistent with Officer Parker=s recollection of her description of the events. Moreover, such a detail, even if inconsistent, is immaterial. Similarly, the fact that Gonzales may have referred to Navarro once as her common law husband and at another time as her boyfriend is immaterial. The trial judge as the trier of fact was in the best position to determine the credibility of all of the witnesses.

Concerning other Ainconsistencies@ in the testimony of the State=s witnesses, Navarro notes that Postelle testified that she saw Navarro grab Gonzales=s hair and Athrow her around@ before he fled the scene, but neither Gonzales nor Officer Parker testified that he did so. The fact that one witness testified to an additional detail about the events does not make her testimony inconsistent with that of other witnesses who did not or chose not to include that detail. Moreover, the testimony does not pertain to an element of the offense.

Finally, Navarro appears to argue that the evidence is legally insufficient to establish that he used a deadly weapon during the commission of the offense. As noted, the police did not recover the knife that Navarro allegedly used to threaten Gonzales. Navarro suggests that Gonzales=s testimony that she found the knife in the couch but failed to alert the police, and that she later lost the knife around the house, is not credible. Gonzales testified with particularity regarding the knife that she claimed Navarro used during the assault. She described its color, length, and the way Navarro held the blade against her body. The store clerk who testified also stated that she saw Navarro wield something resembling a knife or box cutter. Officer Parker testified that Gonzales told him that Navarro used a knife during the incident and that she described the knife to him. Based on this testimony, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Navarro used a deadly weapon during the assault.[3]

---

[3] Although appellant does not challenge the sufficiency of the evidence to prove that the knife was a deadly weapon, we note that while a knife is not a deadly weapon *per se*, *see Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983),

> [t]he State can, without expert testimony, prove a particular knife to be a deadly weapon by showing its size, shape and sharpness, the manner of its use, or intended use and its

**6**

capacity to produce death or serious bodily injury. In determining the deadliness of a weapon the jury may consider all of the facts of the case, including words spoken by the accused.

*Tisdale v. State*, 686 S.W.2d 110, 111 (Tex. Crim. App. 1984) (citations omitted). In the instant case, the State introduced evidence by way of the testimony of Gonzales and Officer Parker regarding the description of the knife, the manner of its use or intended use, and its capacity to cause death or serious bodily injury. Gonzales testified that the weapon was a pocketknife about three inches in length when closed and about five inches in length when the blade was exposed. She stated that Navarro held the knife blade closely against her body and she felt threatened that he would use the knife to stab her. She testified that Navarro cursed and yelled at her, demanding that she come home with him as he held her against the wall, and that he Awasn=t in his right mind.@ Officer Parker testified that based on Gonzales=s description of the knife to him, he felt that the knife was capable of being used as a deadly weapon. The record contains sufficient evidence that the knife constituted a deadly weapon in this case.

7

**CONCLUSION**

Having overruled Navarro=s points of error, we affirm the judgment.


Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed:   August 30, 2002

Do Not Publish

**8**