**Link LAWRENCE, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08-89-00247-CR.**

Court of Appeals of Texas, El Paso.

Jan. 17, 1990.

**790**

Neely C. Lewis, Bryan, for appellant.

Bill R. Turner, Dist. Atty., Bryan, for appellee.

Before FULLER, WOODARD and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

This is an appeal from a conviction for aggravated robbery. The jury assessed punishment, enhanced by prior felony convictions for escape and aggravated assault on a peace officer, at imprisonment for ninety-nine years. We affirm.

In Point of Error No. One, Appellant contends that the court erred in denying his motion for mistrial when the State introduced punishment evidence prior to a reading of the enhancement paragraphs of the indictment and obtaining a responsive plea from the Appellant. In the body of his argument, Appellant also complains of the evidentiary procedure followed by the State after correcting the foregoing error.

The punishment stage commenced with the State's presentation of testimony from Detective Crenshaw identifying Appellant's fingerprints on penitentiary packets offered to substantiate the enhancement allegations. After examining Crenshaw, the State asked to approach the bench, apparently realizing the error in having failed to read the enhancement allegations and obtain a plea before the jury. This provoked a motion for mistrial from the defense. The motion for mistrial was properly denied. Even if the enhancement allegations were irrevocably abandoned, either voluntarily or by forfeit on the part of the State, there would be no error in the simple presentation of Crenshaw's testimony under Tex.Code Crim.Pro.Ann. art. 37.-07 sec. 3 (Vernon Supp.1989) as proof of Appellant's prior criminal record.

After overruling the motion for mistrial, the court permitted the State to read the

enhancement allegations and received pleas of not true to both paragraphs. This was a proper correction of the error which had occurred. *Castillo v. State*, 530 S.W.2d 952, 954 (Tex.Crim.App.1976); *Trammell v. State*, 445 S.W.2d 190, 193–194 (Tex.Crim. App.1969); *Grant v. State*, 635 S.W.2d 933, 935 (Tex.App.—Amarillo 1982, no pet.).

■ Appellant correctly recites that the proper evidentiary procedure to be applied after a tardy reading of the indictment and plea requires that the State either once again call the witnesses and adduce the prior testimony or obtain a stipulation of the evidence from the defense. *Welch v. State*, 645 S.W.2d 284, 285 (Tex.Crim.App. 1983); *Castillo*, 530 S.W.2d at 954.

As reflected in *Welch*, such an error is not destined to be harmless, but the historic treatment of such errors on appeal reflects that the situation is fraught with potential waiver. In *Welch*, the defense asked that the testimony adduced prior to the reading and plea be stricken; that motion was improperly overruled. The State then made an effort, proper or improper, to re-present that evidence before the jury. The result was a reversal on appeal. That approach was not followed in this case. Here, the State sought pro forma reintroduction of Crenshaw's testimony, without recalling the witness or seeking stipulation by the defense. The defense did not object on the basis of hearsay or unsworn testimony or even by simple reference to *Trammell* or *Welch*. Instead, the defense objected that the evidence had already been admitted and therefore, should not be readmitted. This was sustained by the judge and the State then rested. The same defense objection was presented and sustained in *Barbee v. State*, 32 Tex.Crim. 170, 22 S.W. 402 (1893) (consistently cited later in *Welch, Castillo* and *Trammell*). Such a defense position, while not a voluntary stipulation as prescribed by the case law, has consistently been held to be a waiver of the need for reintroduction of the evidence. *Welch*, 645 S.W.2d at 285. Point of Error No. One is overruled.

Point of Error No. Two contends that without Crenshaw's testimony, the evidence was insufficient to sustain the jury's enhancement findings. The disposition of Point of Error No. One leads us to overrule this contention. Even if the underlying premise were correct, the point would not be cognizable on appeal under *Bass v. State*, 732 S.W.2d 632 (Tex.Crim.App.1987). Point of Error No. Two is overruled.

■ In Point of Error No. Three, Appellant complains of the court's refusal to submit a lesser included offense instruction as to robbery, focusing upon the evidence of the deadly weapon character of the knife allegedly used during this offense. The knife actually used was never recovered and introduced into evidence. The primary evidence as to the knife and its manner of use came in the testimony of the complainant, Marcia McDonald. She was working alone at a Circle K convenience store in Bryan, Texas, on the night of November 21, 1988. Two males (the Appellant and another) entered the store and conferred in whispered tones. Appellant then took a candy bar to the register counter. His companion positioned himself at the end of the counter. When McDonald opened the register, Appellant drew a knife and vaulted over the counter. He pushed her back against the inside of the counter and held a knife to her throat. His companion came around the end of the counter and held McDonald while Appellant removed the money from the register. They also went through McDonald's pockets and took her purse. Before leaving, Appellant cut the vinyl-covered cord to the store telephone.

McDonald described the knife as a "regular steak knife" with a serrated edge. Appellant has emphasized McDonald's words, "common household knife," out of context with her entire description. McDonald clearly was referring to the typical source of such a knife, not the precise type of knife. She acceded to a cross-examination question that the blade was four to five inches in length and distinguished it from a butcher knife. She did state that it appeared to be old; the color of the wooden handle had faded and "[t]he point wasn't real sharp." We disagree with Appellant's

characterization of McDonald's description of the knife as "fairly vague."

The primary doctrine involved in this issue is expressed in *Royster v. State*, 622 S.W.2d 442 (Tex.Crim.App.1981). A charge on the lesser offense is required if:

(1) All elements of the lesser offense are included within the proof necessary to establish the charged offense, *and*

(2) There is evidence in the record that the accused, if guilty, is guilty only of the lesser offense.

The first requirement is satisfied in this case. Our focus is upon the second. Clarifying this requirement, the Court of Criminal Appeals has stated that the lesser offense is not raised under *Royster* and need not be charged to the jury simply because proof of the greater offense automatically subsumes proof of the lesser. The evidence must distinguish the accused's possible culpability of the greater offense from his potential liability for the lesser. At times, this Court has described a valid lesser offense under *Royster* as one which the evidence raises as an alternative interpretive scenario of the events described in the evidence. As long as there is some evidence raising the lesser offense, the strength, source, credibility and weight of such evidence are irrelevant to the necessity for jury instruction. *Thompson v. State*, 521 S.W.2d 621 (Tex.Crim.App.1974).

What remains at issue is what constitutes "raising" the evidentiary question of an alternate culpability for a lesser offense. Must there be some evidence from some source which affirmatively and separately depicts the elements of the lesser offense, or is it sufficient that the lesser offense arise merely as the result of an evidentiary weakness (albeit not insufficient evidence) with regard to the State's proof of one or more elements of the greater charged offense? A knife, as in this case, is not a deadly weapon per se. *Tisdale v. State*, 686 S.W.2d 110 (Tex.Crim. App.1985). There was certainly sufficient evidence for the jury to conclude that it was, and indeed the verdict is not challenged on that basis. Nonetheless, that factual issue was not foreclosed from jury determination, and the jury, in their discretion, could have rejected an affirmative finding as to that element of the greater charged offense. Juries have certainly done stranger things. There being a factual issue on the deadly weapon element, some obvious weak spots in the State's proof on that issue, and there being a potential for a negative finding on that element, is there not therefore a factual issue of robbery raised by the remaining proof and remaining elements under the indictment? Has not the defense "raised" an issue as to the lesser offense by developing the vulnerable points in the State's deadly weapon proof through cross-examination of the State's witnesses? If so, does that mean that lesser offense instructions are required in all cases involving weapons which are not deadly per se?

The answer to the foregoing questions is apparently no. *McElroy v. State*, 528 S.W.2d 831 (Tex.Crim.App.1975); *Peacock v. State*, 690 S.W.2d 613 (Tex.App.—Tyler 1985, no pet.). Both cases are to some extent distinguishable from the present cause. In *McElroy*, actual injury was inflicted with a knife, a six-inch wound penetrating the rib cage and requiring thirty stitches to close it. The treating doctor testified that the weapon used was capable of causing death through the manner of its use. In *Peacock*, actual injury was again inflicted with a knife. Two police officers witnessed the assault and testified that the manner of use by the defendant rendered the knife capable of causing death or serious bodily injury. In the present case, the victim was not actually injured and the two police "experts" testifying to the deadly character of the knife did so on the basis of hypothetical reference to the knife's description provided by McDonald. Arguably, *McElroy* and *Peacock* provided those juries with stronger evidence of the deadly weapon element, but still not rising to the level of proof as a matter of law. Those juries were still required to respond affirmatively or negatively as to the deadly weapon element.

Nonetheless, in both cases the appellate courts found no error in refusing the requested lesser offense instructions. Both

opinions contain express language that a defendant seeking a lesser offense instruction may not simply rely upon the relative weakness of the State's proof as to the deadly weapon. In *McElroy*, the Court of Criminal Appeals stated there was "no evidence that the assault was not committed, or that it was nor [sic] committed with a knife, *or* that the knife was not used in such a manner as to render it a deadly weapon." 528 S.W.2d at 834. (Emphasis in original opinion).

In *Peacock*, the Twelfth Court of Appeals noted:

Peacock did not testify and offered no evidence in rebuttal to show that the knife was *not* used as a deadly weapon. 690 S.W.2d at 615 (Emphasis in original opinion).

This language indicates that a defendant must be able to point to some evidence from some source which affirmatively reflects that the weapon was not deadly in the manner of its use or intended use. "Raised by the evidence" under *Royster* does not therefore mean sufficient evidence of a deadly weapon offered by the State but subject to jury rejection upon factual submission of the greater charged offense.

In this case, there was no evidence affirmatively characterizing the knife as non-deadly. We earlier described the *McElroy* and *Peacock* evidence as arguably stronger than that in the present case. If so, the difference is marginal. Nor should our discussion be interpreted as a belief that the deadly weapon evidence in this case was weak. The factors enunciated by this Court and sanctioned by the Court of Criminal Appeals in *Tisdale v. State*, 686 S.W.2d 110, 112, 114–115 (Tex.Crim.App.1985) in assessing knives as deadly weapons by the manner of their use, were amply satisfied in this case. Through cross-examination of McDonald, it was revealed that the point of the knife was not "real sharp." In *Tisdale*, the knife was broken off at the tip. Regardless of the condition of the point, the serrated edge of the present knife was apparently sharp enough to sever a vinyl-covered telephone cord, and consequently, sharp enough to do serious bodily injury to the throat of the victim. Compare *Herbert v. State*, 631 S.W.2d 585 (Tex.App.—El Paso 1982, no pet.) ("kitchen knife" never introduced into evidence but described as having just been used to slice an orange prior to being held to victim's throat). The Appellant and the victim were situated well within the effective injury range of this knife, a factor emphasized in *Tisdale*. The particular vulnerability of the throat as a knife target has been judicially noticed by the courts. *Dominique v. State*, 598 S.W.2d 285 (Tex.Crim.App.1980); *Calvin v. State*, 577 S.W.2d 225 (Tex.Crim.App.1978); *Cruz v. State*, 576 S.W.2d 841 (Tex.Crim.App.1979); *Herbert*, 631 S.W.2d at 585. This is anything but a weak case on the deadly weapon element. Point of Error No. Three is overruled.

The judgment is hereby affirmed.