COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-05-032-CR

 

GEORGE WAYNE COSSEY                                                    APPELLANT

A/K/A
JACKIE LEE SCOTT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction

Appellant George Wayne Cossey
a/k/a Jackie Lee Scott appeals his conviction and twenty-five year sentence for
aggravated assault with a deadly weapon. 
In two issues, appellant argues that the evidence was legally and
factually insufficient to establish that the weapon was deadly.  We affirm.








II.  Background Facts

 On February 8, 2004, appellant entered David
Trevino and Eva Elhassan=s vacant
house when they were showing it to a potential buyer.  While Trevino was upstairs showing the house,
Elhassan stayed downstairs.  After
walking into the kitchen, Elhassan saw appellant standing in the doorway
between the laundry room and the kitchen, and when she screamed, appellant ran
out the back door.

Upon hearing Elhassan=s screams, Trevino ran downstairs, and Elhassan told him that someone,
whom she later identified as appellant, was in the house and that he had run
out the back door.  Trevino ran into the
back yard in an attempt to find appellant, and while he was outside, the
potential buyer, who remained upstairs, banged on the window and began pointing
in the direction that appellant was running. 
Trevino began to run in that same direction.  After Trevino took off on foot chasing
appellant, Elhassan got into her SUV and began following Trevino.








After Elhassan reached
Trevino, Trevino got into the driver=s side of the SUV and began driving down the street.  When Trevino and Elhassan drove past
appellant, who was walking on the sidewalk, Elhassan did not recognize him
because Trevino was driving too fast. 
However, after they reached the end of the street, Trevino made a u-turn
and began driving back in the opposite direction.  Elhassan recognized appellant after Trevino
pulled up next to him.  Trevino pulled
over and got out of the truck and confronted appellant while Elhassan called
the police.

During the confrontation,
appellant pulled a pocketknife from his back pocket and told Trevino, AI will stick you.@  However, approximately thirty
to forty-five seconds after appellant removed the pocketknife, Officer B.D.
Wheeler, a Fort Worth police officer, arrived at the scene and arrested
appellant.

The jury found appellant
guilty of aggravated assault with a deadly weapon, and after appellant pled
true to the habitual offender notice, the trial court assessed his punishment
at twenty-five years in the Institutional Division of the Texas Department of
Criminal Justice.

III.  Legal and Factual Sufficiency

In two issues, appellant
contends that the evidence was legally and factually insufficient to
demonstrate that the weapon was deadly.  

A.  Standards of Review








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime beyond
a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).

In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004).  The only
question to be answered in a factual sufficiency review is whether, considering
the evidence in a neutral light, the fact finder was rationally justified in
finding guilt beyond a reasonable doubt. 
Id. at 484.  There are two
ways evidence may be factually insufficient: 
(1) when the evidence supporting the verdict or judgment, considered by
itself, is too weak to support the finding of guilt beyond a reasonable doubt;
or (2) when there is evidence both supporting and contradicting the verdict or
judgment and, weighing all of the evidence, the contrary evidence is so strong
that guilt cannot be proven beyond a reasonable doubt.  Id. at 484-85.  AThis standard acknowledges that evidence of guilt can >preponderate= in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id. 








In performing a factual
sufficiency review, we are to give deference to the fact finder=s determinations, including determinations involving the credibility
and demeanor of witnesses.  Id. at
481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the
fact finder=s.  Zuniga, 144 S.W.3d at 482.  

A proper factual sufficiency
review requires an examination of all the evidence.  Id. at 484, 486-87.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint
on appeal.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

B.  Applicable Law

Penal code section
1.07(a)(17) defines a deadly weapon.  Tex. Penal Code Ann. ' 1.07(a)(17) (Vernon Supp. 2005). 
A deadly weapon is defined as Aa firearm or anything manifestly designed, made, or adapted for the
purpose of inflicting death or serious bodily injury@ or Aanything
that in the manner of its use or intended use is capable of causing death or
serious bodily injury.@  Id.

C.  Analysis

At the trial, Trevino
testified that he confronted appellant after Elhassan identified appellant as
the man who broke into their house. 
Trevino stated that he got out of the SUV and walked towards appellant,
who was walking on the sidewalk, and asked, A[M]an, what are you doing in my house?@  Appellant responded that he
did not know what Trevino was talking about.








In an effort to keep
appellant there until the police arrived, Trevino began walking backwards in
front of appellant.  Trevino testified
that while the two men were walking down the street, he saw appellant pull out
what appeared to be a pocketknife from his back pocket with his right hand and
hold it to the side of his body.  At the
trial, Trevino testified that he could not tell if the knife was open or
closed, but he thought that it was open because he saw the blade. 

Trevino stated that he felt
threatened because he was close enough to appellant that appellant could have
reached out and touched him.  Further,
after appellant told Trevino, AI will stick you,@ Trevino moved away from appellant. 

Elhassan testified that after
she identified appellant, Trevino got out of the SUV and told appellant that he
needed to stay there until the police arrived. While Trevino was walking in
front of appellant and talking to him, appellant pulled out an object that
Elhassan could not identify and heard him threaten Trevino.  Elhassan testified that she believed that
Trevino was in danger.  After the police
arrived, Elhassan saw that the item was a closed knife.

Officer Wheeler testified
that he was dispatched to a call after receiving a report that someone had
broken into a house and the people were following the intruder.  When he arrived at the scene, Officer Wheeler
stated that he saw appellant and Trevino walking down the street, and Elhassan
was in the SUV yelling, AThat=s him, that=s him.@ 








Thinking that appellant had
just fled the scene from a burglary, Officer Wheeler immediately got out of his
patrol car and forced appellant to the ground and handcuffed him.  Officer Wheeler testified that appellant had
a closed pocketknife in his hand when he arrested appellant.  Officer Wheeler stated that the pocketknife
was capable of causing serious bodily injury. 
But Officer Wheeler did not feel that appellant was holding the knife in
a threatening manner.

At trial, appellant conceded
that he was at Trevino and Elhassan=s house, but testified that he remained on the deck and did not go
inside.  Appellant stated that after he
heard Elhassan scream, he turned around and ran down the alley. 

Appellant stated that he was
concerned when he saw a black SUV cruising up and down the street.  Appellant testified that after the SUV pulled
over, Trevino got out, and appellant noticed that Trevino had his hand behind
his back and that he was making Athreatening moves.@  Appellant stated that he felt
threatened by Trevino and that he thought Trevino was a gang member because of
the way he was dressed and the way he walked. 
Appellant testified that while he was being confronted by Trevino, he
put his hands in his pocket and inadvertently pulled out a knife.  Appellant stated that as soon as he realized
that he had a knife in his hand, he put the knife back in his pocket.  








Additionally, appellant
stated that after Elhassan told Trevino that the police were coming, he saw
Trevino shove an object into his pocket and heard the metallic click of a knife
closing.[2]  Further, appellant testified that he did not
intend to assault Trevino with the pocketknife and he did not tell Trevino that
he was Agoing to stick [him]@ with it.  








Appellant contends that the
evidence was legally and factually insufficient to demonstrate that the
pocketknife was a deadly weapon. 
Although a knife is not a deadly weapon per se, the court of criminal
appeals has held that an object such as a knife can be a deadly weapon if the
actor intends to use the object in a way in which it would be capable of
causing death or serious bodily injury.  McCain
v. State, 22 S.W.3d 497, 502-03 (Tex. Crim. App. 2000); Russell v.
State, 804 S.W.2d 287, 290 (Tex. App._Fort
Worth 1991, no pet.).    When no actual injury is sustained, the State
must present evidence of other factors to establish that a knife is a deadly
weapon.  In re D.L., 160 S.W.3d
155, 166 (Tex. App._Tyler 2005, no pet.).  The
relevant factors include the following: (1) size, shape, and sharpness of the
knife; (2) manner of its use or intended use; (3) the nature or existence of
inflicted wounds; (4) testimony of the knife=s life-threatening capabilities; (5) the physical proximity between
the victim and the knife; and (6) the words spoken by appellant.  See, e.g., Thomas v. State, 821 S.W.2d
616, 619-20 (Tex. Crim. App. 1991); Tisdale v. State, 686 S.W.2d 110,
115 (Tex. Crim. App. 1985) (op. on reh=g); Williams v. State, 575 S.W.2d 30, 32 (Tex. Crim. App.
[Panel Op] 1979); Garcia v. State, 17 S.W.3d 1, 4 (Tex. App._Houston
[1st Dist.] 1999, pet. ref=d).  Wounds need not be
inflicted before a knife can be determined to be a deadly weapon.  Brown v. State, 716 S.W.2d 939, 946
(Tex. Crim. App. 1986); Rogers v. State, 877 S.W.2d 498, 500 (Tex. App._Fort
Worth 1994, pet. ref=d).  No one factor is determinative, and the fact
finder must examine each case on all of its facts to determine whether the
knife is a deadly weapon.  See D.L., 160
S.W.3d at 166; Garcia, 17 S.W.3d at 4. 









Appellant contends that the
State has failed to present any evidence on the shape or sharpness of the
knife.[3]  Additionally, appellant argues that the evidence
fails to show that the intended use and capacity of the knife were to cause
serious bodily injury because the knife was closed when Officer Wheeler
arrested him.  The State asserts that
other evidence in the record is legally and factually sufficient to support the
jury=s finding.  We agree.

The record shows that
appellant was approximately two to three feet from Trevino and that Trevino
could reach out and touch appellant. 
Trevino  testified that appellant
told him that he was going to Astick him@ after
appellant removed the knife from his pocket. 
Trevino stated that he thought that the knife was open because he saw
the blade.  Trevino said that the
pocketknife was approximately five to six inches long, while Officer Wheeler
testified the pocketknife was two to three inches long.  Additionally, Officer Wheeler testified that
the knife was capable of causing serious bodily injury. 

We hold that the evidence,
when viewed in the light most favorable to the verdict, supports a
determination beyond a reasonable doubt that the weapon was deadly; therefore,
we overrule appellant=s first
issue.  Additionally, when viewed
neutrally, the evidence is not so obviously weak or so greatly outweighed by
contrary proof that it would not support the finding of guilty beyond a
reasonable doubt.  We overrule appellant=s second issue. 

 

 

 

 








IV.  Conclusion

Having overruled appellant=s two issues, we affirm the trial court=s judgment.

 

PER CURIAM

 

PANEL F:    LIVINGSTON, WALKER, and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
January 12, 2006

 

 











[1]See Tex. R. App. P. 47.4.





[2]However,
at the scene, appellant did not tell Officer Wheeler that Trevino had a knife,
and Officer Wheeler did not search Trevino. 
Therefore, it is unclear whether Trevino was actually carrying a knife. 





[3]Appellant
argues that there was no testimony regarding the knife used by appellant
because the knife was not introduced at trial. 
However, the State does not have to introduce the knife into evidence to
meet its burden of proving the knife was a deadly weapon.  See Morales v. State, 633 S.W.2d 866,
868 (Tex. Crim. App. 1982); Rogers, 877 S.W.2d at 500.