

# In the Court of Criminal Appeals of Texas

---

No. PD-0514-24

---

MICHAEL DONELL GLOVER, *Appellant*

v.

THE STATE OF TEXAS

---

On State's Petition for Discretionary Review
From the Fifth Court of Appeals
Kaufman County

---

YEARY, J., delivered the opinion of the Court in which SCHENCK, P.J., and WALKER, FINLEY, and PARKER, JJ., joined. WALKER, J., filed a concurring opinion in which SCHENCK, P.J., and FINLEY and PARKER, JJ., joined. RICHARDSON and NEWELL, JJ., concurred in the result. KEEL and MCCLURE, JJ., dissented.

Can a pocketknife be a deadly weapon? For present purpose, a "deadly weapon" is "anything that in the manner of its use or intended

use is capable of causing death or serious bodily injury." TEX. PENAL CODE § 1.07(a)(17)(B). The court of appeals in this case found that, "[e]ven when viewed in the light most favorable to the verdict, nothing in the State's evidence sufficiently support[ed] either a direct or inferential conclusion that the manner of [Appellant's] use or intended use of the pocketknife made it capable of causing death or serious bodily injury." *Glover v. State*, No. 05-23-00571-CR, 2024 WL 2763658, at *3 (Tex. App.—Dallas May 30, 2024) (mem. op., not designated for publication); *see* TEX. PENAL CODE § 29.03(a)(3) (providing that "[a] person commits an offense if he commits robbery . . ., and he . . . uses or exhibits a deadly weapon"). We disagree and will reverse.

## I. FACTS AND PROCEDURAL POSTURE

At about 6:00 a.m. on January 10, 2022, Appellant was observed in a Buc-ee's convenience store, in Terrell, completely filling up a Buc-ee's soft-side cooler with, among other things, dozens of cigarette packs. When he left the store without paying for either the cigarettes and other items, or for the cooler, an employee, Delbert DeWayne Parks, followed him outside and requested that he return the merchandise. Appellant replied, "Just let me go." Parks testified that "it came to a point where we both stopped[.]"

At this point, Parks "grabbed" what he called "the duffel bag" and tried to wrest it from Appellant. Again, he urged Appellant to relinquish control of the cooler, but Appellant replied, "Let me have it." At about this same time, as they struggled for the cooler, Appellant reached for his pocket.

Uncertain of what Appellant might retrieve, Parks said, "Don't do

that, dude." And when Parks could tell that Appellant had pulled a knife from his pocket, he told Appellant, "Dude, I'll fuck you up." Notwithstanding this bravado, once Appellant had "brandished the weapon[,]" Parks became fearful that Appellant would "cut" him. But Appellant instead began to cut the nylon strap to the soft-side cooler, keeping the knife "close to him" as he did so. As they continued to struggle for possession of the cooler, and as Appellant continued cutting the strap, Appellant apparently noticed Parks' name tag, and he said, "Come on, DeWayne." At this point, fearful of the knife, Parks let go of the cooler and backed away.

On cross-examination, Parks could not describe the knife in any detail, but he had "no doubt" it was a knife. He knew it was sharp enough to successfully cut through the nylon strap. Parks confirmed that Appellant did not at any time swing the knife at him or point it at him. Nor did Appellant pursue Parks once Parks had relinquished possession of the cooler.

When Appellant was arrested a short time after the robbery, police recovered a folding knife from his back pocket. The knife had a blade that was "roughly two, maybe three inches long[.]" Such a knife, one of the arresting officers opined, could "kill somebody[.]" The other arresting officer described the knife as "pretty sharp" and "very pointed," and he also opined that such a knife could be a deadly weapon. The knife itself was introduced into evidence.

The jury convicted Appellant of aggravated robbery as charged in the indictment—that is, the use or exhibition of a deadly weapon, to wit: a knife, while committing robbery by intentionally or knowingly

threatening or placing Parks in fear of imminent bodily injury or death. TEX. PENAL CODE §§ 29.03(a)(2), 29.02(a)(2). Appellant pled "true" to two enhancement counts, and the trial court sentenced him to life imprisonment. He appealed.

Appellant's single point of error on appeal was a challenge to the legal sufficiency of the State's evidence to prove the aggravating element of use or exhibition of the knife as a deadly weapon. The court of appeals sustained this point of error. *Glover*, 2024 WL 2763658, at *3−4. It concluded that:

> nothing in [A]ppellant's words or actions would permit a jury to rationally infer that he had any intention of using the pocketknife to inflict death or serious bodily injury. Given the absence of evidence rationally supporting the jury's finding that [A]ppellant's use or intended use of the pocketknife to cut the cooler's straps could cause death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ, we conclude the evidence is legally insufficient to support the aggravating element of [A]ppellant's conviction.

*Id*. at *3. Accordingly, the court of appeals reformed Appellant's judgment to reflect conviction for the lesser-included offense of robbery, reversed his life sentence, and remanded the case to the trial court for resentencing. *Id*. at *4.

## II. THE APPLICABLE STATUTES

As alleged in this case, a person commits robbery "if, in the course of committing theft as defined in Chapter 31 [of the Texas Penal Code] and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE § 29.02(a)(2). The

robbery offense is "aggravated," and thus boosted from a second-degree felony to a first-degree felony, "if [the person] commits robbery as defined in Section 29.02, and he . . . uses or exhibits a deadly weapon[.]" TEX. PENAL CODE § 29.03(a)(2). "[D]eadly weapon" is defined in the Penal Code as, among other possible options, "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE § 1.07(a)(17). "Serious bodily injury[,]" in turn, "means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE § 1.07(a)(46).

The question in this case is whether the evidence was sufficient to prove that Appellant used or exhibited a deadly weapon in the course of intentionally or knowingly threatening or placing Parks in fear of imminent bodily injury or death. The Court has often said that "[a] knife is not a deadly weapon per se." *E.g.*, *Brown v. State*, 716 S.W.2d 939, 946 (Tex. Crim. App. 1986) (citing *Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983)). What the Court has meant by this is that implements such as utility knives, straight razors, pocketknives, and even butcher knives, which are *not* manifestly *designed* or even, of themselves, *adapted* for the purpose of causing death or serious bodily injury to persons, "do not qualify as deadly weapons" under Section 1.07(a)(17)(A) of the Penal Code. *See McCain v. State*, 22 S.W.3d 497, 502−03 (Tex. Crim. App. 2000) (citing *Thomas v. State*, 821 S.W.2d 616, 619−20 (Tex. Crim. App. 1991)) ("Apparently, what we now sometimes mean by the expression ['deadly weapon per se'] is any object meeting the definition

set out in" what is now Section 1.07(a)(17)(A) of the Penal Code).

Thus, the court of appeals did not err to examine the evidence presented here to determine whether it was legally sufficient to establish that the pocketknife in this case constituted a deadly weapon under the *alternative* definition found in Section 1.07(a)(17)(B): whether, in the manner of its use or intended use, it was capable of causing death or serious bodily injury. *Glover*, 2024 WL 2763658 at \*2. But in asking itself whether the evidence was sufficient to satisfy this alternative definition, the court of appeals focused almost exclusively on evidence relating to the most obvious aspect of Appellant's use of the pocketknife when he wielded it, namely, to cut the cooler strap.

In our view, however, under the circumstances of this case, a rational jury could find that cutting the cooler strap was not the *only* use or intended use to which Appellant put the knife.[1] The jury in this case could also have rationally concluded that Appellant used and/or exhibited the pocketknife with the additional intent to persuade Parks that, if he did not let go of the cooler, Appellant might use it against him in a way that was capable of causing serious bodily injury, if not death. And that, we conclude, is sufficient.

### III. ANALYSIS

In *McCain v. State*, 22 S.W.3d 497, 502−03 (Tex. Crim. App. 2000), this Court identified a "two-step process" that reviewing courts

---

[1] "When reviewing the record for legal sufficiency, we consider the combined and cumulative force of all admitted evidence and reasonable inferences therefrom in the light most favorable to the verdict to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt." *Johnson v. State*, 509 S.W.3d 320, 322 (Tex. Crim. App. 2017) (citing *Jackson v. Virginia*, 443 U.S. 307, 318−19 (1979)).

should use to analyze whether a knife (or any other object) has been shown to be a deadly weapon. The Court explained there that, "the question first arises: Could the object [here, a pocketknife] be a deadly weapon under the facts of the case? If that question is answered in the affirmative, then we would have occasion to ascertain whether that object was used or exhibited during the offense." *Id*. at 502. We shall conduct these inquiries in turn.

### A. Could the Pocketknife Be a Deadly Weapon under the Facts of this Case?

In answering this first question, we do not ask whether the implement, in the manner of its use or intended use during the robbery, *actually* caused death or serious bodily injury. *Id*. at 503. Instead, "[t]he placement of the word "capable" in [Section 1.07(a)(17)(B)] enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force." *Id*. (citing *Tisdale v. State*, 686 S.W.2d 110, 114−15 (Tex. Crim. App. 1985) (op. on reh'g)). Indeed, "the defendant need not have actually inflicted harm on the victim." *Johnson v. State*, 509 S.W.3d 320, 323 (Tex. Crim. App. 2017).

Instead, in deciding whether the knife in question was *capable* of causing death or serious bodily injury, this Court has said:

> we consider words and other threatening actions by the defendant, including the defendant's proximity to the victim; the weapon's ability to inflict serious bodily injury or death, including the size, shape, and sharpness of the weapon; and the manner in which the defendant used the weapon. * * * These, however, are just factors to guide a court's sufficiency analysis; they are not inexorable commands.

*Id*. Moreover, in determining whether a knife is a deadly weapon under

the facts of a given case, the Court has said, "a factfinder should consider its *intended* use from the attitude indicated by the perpetrator." *Tisdale*, 686 S.W.2d at 117 (Clinton, J., concurring on reh'g):

> When a suspect acts in a way that shows his purpose is to convey to his victim that he will thwart resistance to a taking by using the knife to harm the person of the victim, he *intends* for the victim to believe that the knife is capable of producing serious bodily injury or death to obtain the money, and the factfinder is warranted in concluding that the knife is capable of causing death or serious bodily injury.

*Id.* (Clinton, J., concurring on reh'g) (internal brackets, quotation marks and citations omitted).

In *McCain* itself, the near-unanimous Court determined that, under the particular circumstances of that case, "the mere carrying of a butcher knife" that was plainly visible in, but never removed from, the defendant's back pocket as he violently assaulted the victim "was legally sufficient for a factfinder to conclude that the 'intended use' for the knife was that it be capable of causing death or serious bodily injury." 22 S.W.3d at 503. "In other words," as we described *McCain*'s analysis in *Flores v. State*:

> it was reasonable for the factfinder to conclude that the only reason McCain carried a butcher knife in his back pocket during his violent attack on the victim was that he intended to use the knife to stab the victim if he needed to do so to facilitate his crime.

620 S.W.3d 154, 159 (Tex. Crim. App. 2021). Indeed, it did not even matter to our bottom line in *McCain*, we also observed in *Flores*, that "the defendant never made any verbal threat to use the knife." *Id.*

In the instant case, several police officers testified that the pocketknife Appellant produced in this case was both "sharp" and "pointed," and, at least hypothetically, capable of causing death or serious bodily injury. Of course, "under the first step in *McCain*, the question is not whether the object 'could' possibly be a deadly weapon under a hypothetical scenario. Instead, it is whether the object 'could be a deadly weapon *under the facts of the case.*'" *Id*. at 158 (quoting *McCain*, 22 S.W.3d at 502).

Here, the pocketknife was before the jury, and the jurors could see for themselves that it had a blade of between two and three inches long. A knife blade of this length has been found by this Court to be a deadly weapon under certain circumstances. *See Tisdale*, 686 S.W.2d at 111 (op. on orig. subm.) (observing that the knife in issue "was shown to have a blade length of two and one-fourth inches"). And Appellant pulled out the pocketknife while he was struggling with Parks for possession of the soft-side cooler.

Given their close quarters, the potential threat to Parks was not diminished by the fact that evidence showed that Appellant kept the knife close to his own body. Also, although Appellant made no overt threat or gesture to actually use the pocketknife to cut Parks, the jury could rationally have found that a threat to do so was at least implicit in Appellant's repeated entreaties for Parks to, *e.g.*, "Just let me go," and "Let me have it," before pulling out the pocketknife, together with his statement, "Come on, DeWayne," once the pocketknife was out and visible. The jury could readily have concluded that Appellant's intention was to convey to Parks a willingness, however reluctantly, to use the

pocketknife "if he needed to do so to facilitate his crime." *Flores*, 620 S.W.3d at 159.

Nor does the fact that Appellant in fact used the pocketknife for the non-deadly purpose of cutting the nylon strap of the soft-side cooler necessarily mean that this was his only intended use for it, as the court of appeals seems to have believed. *Glover*, 2024 WL 2763658, at *3. A rational jury might readily have found that an intent to use the pocketknife to intimidate Parks into releasing the cooler could coexist with an intent to cut the strap. Indeed, the fact that the pocketknife proved sharp enough to cut through the strap likely contributed to a jury finding that it was dangerous enough, in the course of the scrum, to cause Parks actual, not just hypothetical, serious bodily injury. We cannot say that such a finding would have lacked rational evidentiary support under the circumstances.

### B. Did Appellant "Use or Exhibit" the Pocketknife?

Having determined that the evidence was legally sufficient to support a jury finding that the pocketknife was, in the manner of its use or intended use, a deadly weapon, we turn to the second step of the *McCain* analysis: whether Appellant "used or exhibited" the pocketknife during the robbery. *McCain*, 22 S.W.3d at 503. We said in *McCain* that "a person 'uses or exhibits a deadly weapon' under the aggravated robbery statute if he employs the weapon in any manner that 'facilitates the associated felony.'" *Id*. at 502 (quoting *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989)). "Had the knife been completely concealed by [McCain's] clothing," we observed, "additional facts would have been needed to establish that the butcher knife was used." *Id*. at

503.

> But the knife was partially exposed, and from that exposure, the factfinder could rationally conclude that the knife was exhibited during the criminal transaction, or at least, that its presence was used by [McCain] to instill in the complainant apprehension, reducing the likelihood of resistance during the encounter.

*Id.* Thus, McCain "used" the butcher knife inasmuch as its use, even if only to intimidate the victim, "facilitate[d] his commission of the robbery. *Id.*

Likewise, the jury in this case could rationally have concluded that Appellant's display of the pocketknife—regardless of whether he actually "brandished" it, as Parks asserted at one point—constituted a "use or exhibition" of it "to instill in the complainant apprehension, reducing the likelihood of resistance" to his escaping with the stolen merchandise. And once again, the fact that Appellant actually employed the pocketknife to sever the nylon strap of the soft-side cooler does not detract from the rationality of a jury finding that he also "used or exhibited" it for the purpose of convincing Parks that it was in his best interest to abandon the cooler and let Appellant escape with it.

## IV. CONCLUSION

The court of appeals erred to conclude that the evidence was insufficient to prove the aggravating element of Appellant's conviction for aggravated robbery. We reverse the court of appeals' judgment and reinstate the judgment of the trial court.

**DELIVERED:** April 16, 2025
**PUBLISH**