

NUMBER 13-07-00290-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

DANNY ARZOLA,                                       **Appellant,**

**v.**

THE STATE OF TEXAS,                                **Appellee.**

**On appeal from the 156th District Court
of Bee County, Texas.**

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Garza

Appellant, Danny Arzola, was convicted on two counts of aggravated assault by threat, each a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.02(a)(2), (b) (Vernon Supp. 2007). He now appeals, challenging the legal and factual sufficiency of the evidence supporting both counts. We affirm.

### I. BACKGROUND

Arzola and Jamie Lee Lane had a sexual relationship while Lane was a minor. Subsequently, Arzola was convicted of statutory rape and was incarcerated. After Arzola

returned from prison, Lane contacted Arzola's sister in order to see him. At that time, Arzola was in a relationship with another woman, but after Lane made contact with him, they attempted to resume their prior relationship.

On October 13, 2006, Lane and her daughter had been staying at Arzola's home at 1525 East Hefferman in Beeville, Texas for approximately one week, when Lane decided that she wished to return home. Arzola called Lane's friend, Monica Gutierrez, and asked her to pick up Lane and her belongings from Arzola's house. Upon arriving, Gutierrez informed Arzola that she was there to pick up Lane. According to Gutierrez, Arzola walked out toward her vehicle, took his shirt off, and started cursing and "throwing gang signs," while Gutierrez stood with her car door in front of her. Gutierrez stated that Arzola told her "to get the fuck off my property" while holding a knife, and that she felt bothered and threatened by Arzola's actions. She testified that because she feared for her life and for her son's life, she got into her car and left. Gutierrez then called the police.

Lane stated that, once Gutierrez left, Arzola threatened her with a knife and said "I should kill your bitch ass and let your daughter watch you suffer." When asked how close Arzola was to her when he had the knife in his hand, Lane said "Oh, this close," while pointing to her throat.

Lane testified that she did not know whether Arzola was serious or not, but that while Arzola was threatening her, she stayed very quiet and tears came to her eyes. Lane stated that she was "not going to piss somebody off that has a knife in their hand." Lane commented that the knife was a bit longer than the one produced by the State at trial, had holes in it, was dull, and the bottom part was black, "like plastic and more of a stainless steel." Lane testified that the knife Arzola brandished was capable of causing death or serious bodily injury because "it's dull, but if you were to like really put force into it and force it, yeah. Oh, yeah it could hurt somebody." She further stated that, after the incident, Arzola closed the knife, put it away, and walked out of the room.

Subsequently, Lane and Arzola went to his mother's house, which is adjacent to

2

Arzola's house. While there, they continued to argue, and Lane again told Arzola that she wanted to go home. Lane stated that Arzola then said, "Well, just go home." Lane stated that when the police arrived she was standing behind Arzola, and she gave the officer a signal to come inside. Lane told the officer that she simply wanted to go home and that Arzola did not hit her; Lane later testified that she said this because Arzola was standing right next to her. According to Lane, once the officer arrived, Arzola hid the knife in a pantry, slowly got up, went around the front of the house, and started talking to the officer.

Lane testified that she didn't retrieve the knife but told Beeville Police Department officer Regan Scott where it was at the time of the incident. Lane explained that Officer Scott and fellow officer Patrick Reynolds were too busy calming down Arzola to retrieve the knife.

Officer Reynolds stated that he was dispatched to 1523 East Hefferman on October 13, 2006, where he found Arzola "very upset and angry" and wanting to know "why everybody kept fucking with him." According to Officer Reynolds, Lane was afraid of saying anything to him in front of Arzola and that when she did talk to him, Arzola repeatedly attempted to intervene. Because Arzola continued to use abusive language in public, Reynolds arrested him for disorderly conduct. *See id.* § 42.01 (Vernon Supp. 2007). Arzola was also charged with aggravated assault with a deadly weapon. *See id.* § 22.02.

Officer Scott testified that he was also dispatched to Arzola's residence, where he encountered Lane, who appeared distraught. Officer Scott asked Lane to separate from Arzola; at that point, Arzola became agitated and began cursing. Lane then departed the scene with her daughter. Once Arzola was arrested, Officer Scott advised Officer Reynolds of Lane's account of events and gave him her location. Officer Reynolds then spoke with Lane, who told him what happened prior to the officers' arrival.

Arzola testified in his defense. He stated that once he and Lane decided to try to rekindle their prior relationship, he invited her over to his house. Arzola stated that he did

3

not threaten Gutierrez, but told Lane to leave when Gutierrez arrived. Arzola testified that Lane did not leave because "she was scared of her life." Arzola asked rhetorically, "Why she's scared of her life if I'm telling her to leave?" Arzola testified that he did not threaten Lane in any way, nor did he use a knife. He claimed that prior to the arrival of the police he was not arguing with Lane, but rather was talking to his six-year-old nephew. Arzola remarked that when he spoke to the officers, he did become agitated because he wanted to know why people were "messing with him."

A Bee County grand jury indicted Arzola for two counts of aggravated assault by threat, against Gutierrez and against Lane.[1] *See id.* On February 27, 2007, Arzola waived his right to a jury trial pursuant to article 1.13 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 1.13 (Vernon 2005). On March 14, 2007, the trial court convicted Arzola on both counts and sentenced him to two eight-year prison sentences to run concurrently. On April 13, 2007, Arzola filed a timely pro se notice of appeal.

## II. STANDARD OF REVIEW

The Texas Court of Criminal Appeals has declared that the relevant appellate inquiry for legal sufficiency is whether, after considering the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements

---

[1] The first paragraph of the indictment read as follows:

[Arzola], on or about the 13th day of October, A.D., 2006, and before the presentment of this indictment, in the County and State aforesaid, did then and there intentionally or knowingly threaten Monica Gutierrez with imminent bodily injury by telling her "to get the fuck off his property" while exhibiting gang signs and walking towards the said Monica Gutierrez, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a knife, that in the manner and means of its use was capable of causing death or serious bodily injury.

The second paragraph of the indictment read as follows:

[Arzola], on or about the 13th day of October, A.D., 2006, and before the presentment of this indictment, in the County and State aforesaid, did then and there intentionally or knowingly threaten Jaime Leigh Lane with imminent bodily injury by telling her "I should kill your bitch ass and let your daughter watch you suffer" and the defendant did then and there use or exhibit a deadly weapon, to-wit: a knife, that in the manner and means of its use was capable of causing death or serious bodily injury . . . .

of the crime beyond a reasonable doubt. *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). The court stated that this "standard is meant to give 'full play to the [trier's] responsibility fairly' to 'draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 318 (1979)). A reviewing court is not required to determine whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt; rather, when faced with conflicting evidence, it must presume that the trier of fact resolved any such conflict in favor of the prosecution, and accordingly must defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

In determining whether the evidence is factually sufficient, we review all of the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). Unlike legal sufficiency inquiries, we do not assume that the jury resolved conflicting evidence in favor of the prosecution. *See id.* at 415. *Watson* fashioned a two-prong analysis to determine factual sufficiency. The first prong asks whether evidence introduced to support the verdict is so weak that the jury's verdict seems clearly wrong and manifestly unjust. *Id.* at 414-15. The second prong asks whether, considering conflicting evidence, the jury's verdict is against the great weight and preponderance of the evidence. *Id.* at 415.

Due to the nature of a factual sufficiency review, an appellate court is able to act as a thirteenth juror to a limited degree, but it is not enough that the appellate court harbor a subjective level of reasonable doubt to overturn a conviction that is founded on legally sufficient evidence. *Id.* at 416-17. "That an appellate court would have acquitted a defendant on the same facts that convinced a rational jury to convict has not ever by itself met the criteria of manifest injustice." *Id.* at 416. To reverse a verdict for factually insufficient evidence, we must "explain in exactly what way the State's evidence, while legally sufficient, is nevertheless too weak to withstand scrutiny, or in exactly what way we perceive the conflicting evidence greatly to preponderate against conviction." *Id.* at 414. An appellate court must first be able to say, with some objective basis in the record, that

the great weight and preponderance of the legally sufficient evidence contradicts the jury verdict before it is justified in excising its appellate fact jurisdiction to order a new trial. *Id.* at 417.

### III. DISCUSSION

### A. Aggravated Assault – Gutierrez

By his first and second issues, Arzola contends that the evidence supporting the first count of the indictment, for aggravated assault by threat against Gutierrez, was legally and factually insufficient. A person commits aggravated assault by threat if he intentionally or knowingly threatens another with imminent bodily injury while using or exhibiting a deadly weapon. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2) (Vernon Supp. 2007), 22.02(a)(2).

Arzola first cites to the definition of "deadly weapon" in section 1.07(a)(17)(B) of the Texas Penal Code and argues that the State failed to prove beyond a reasonable doubt that the knife was a deadly weapon. *See id.* § 1.07(a)(17)(B) (Vernon Supp. 2007). The statute defines "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.*

Knives are not, per se, deadly weapons. *Tisdale v. State*, 686 S.W.2d 110, 114 (Tex. Crim. App. 1985). The evidence at trial must have supported the conclusion that the knife in this case was capable of causing death or serious bodily injury due to the manner of its use by Arzola. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B). The mere presence of a deadly weapon, under proper circumstances, can be enough to instill fear and threaten a person with bodily injury. *Tisdale*, 686 S.W.2d at 114. One circumstance that can show the deadliness of a knife is when a threat is communicated by a defendant while displaying the knife. *See McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). As the court of criminal appeals stated in *McCain*:

> The provision's plain language does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury. The placement of the word "capable" in the provision enables the statute to cover conduct that threatens deadly force, even if the

6

actor has no intention of actually using deadly force.

*Id.*

Gutierrez testified that Arzola said "get the fuck off my property" while holding the knife and walking toward her. This evidence is sufficient to show that the knife in question was a deadly weapon under *McCain*. *See id*. Arzola clearly communicated a threat while holding the knife. It does not matter if Arzola intended for the serious bodily injury to result; what matters is that he used the knife in a way in which it would have been capable of serious bodily injury. *See id.* The evidence supports the conclusion that the knife used by Arzola was a deadly weapon. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(B).

Given Gutierrez's testimony that Arzola was walking toward her and threatening her while brandishing the knife, we find the evidence to be legally sufficient to support the trial court's conclusion that Arzola intentionally or knowingly threatened Gutierrez with imminent bodily injury. *See id.* § 22.01(a)(2). Although Arzola denied threatening Gutierrez, we must presume that the trier of fact resolved this evidentiary conflict in favor of the prosecution, and accordingly must defer to that resolution. *See Turro*, 867 S.W.2d at 47.

Moreover, we conclude that the evidence was factually sufficient to support Arzola's conviction on count one. *See Watson*, 204 S.W.3d at 414-415. Arzola testified that he could not explain why Lane did not leave when Gutierrez arrived or why Gutierrez, having traveled to Arzola's house to pick up Lane, did not get out of her car. Although Arzola claimed that he did not use a knife, he does not offer an alternate explanation of why Gutierrez would not get out of her car after he asked her to come over, or why Lane would not leave. We cannot say that the trial court's verdict on this count seems clearly wrong or manifestly unjust. *See id.* Further, in considering the conflicting testimony, the verdict was not against the great weight and preponderance of the evidence. *See id*. at 415. Arzola's first and second issues are overruled.

**B. Aggravated Assault – Lane**

By his third and forth issues, Arzola argues that the evidence supporting the second

count of the indictment, for aggravated assault by threat against Lane, was factually and legally insufficient. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2). We disagree.

Lane testified that Arzola said to her "I should kill your bitch ass and let your daughter watch you suffer." Lane further testified as follows:

Q.    How close was he [Arzola] to you when he had the knife in his hand?

A.    Oh, this close. This close.

Q.    Show me that again.

A.    He was this close.

Q.    So you're pointing to your throat?

A.    Yes.

As noted, under *McCain*, the deadliness of a knife may be inferred if threats are communicated by the defendant while displaying the knife. *See McCain*, 22 S.W.3d at 503. Considering Lane's testimony that Arzola stated "I should kill your bitch ass and let your daughter watch you suffer," while he was "this close" to her throat, we find sufficient evidence of a threat to justify the finding that the knife brandished by Arzola was a deadly weapon. *See id.*; *see also* TEX. PENAL CODE ANN. § 22.02(a)(2).

Arzola disputes that the statement "I should kill your bitch ass and let your daughter watch you suffer" qualifies as a threat of imminent bodily injury. *See* TEX. PENAL CODE ANN. § 22.01(a)(2). Arzola first contends that this statement was not a threat because Lane testified that she didn't know whether Arzola was serious. However, Lane also testified that she was "not going to piss somebody off that has a knife in their hand"; this statement is evidence that Lane viewed Arzola's actions as threatening.

Arzola next argues that his statement to Lane was not an imminent threat because "a threat to do harm in the future is not a threat of imminent bodily injury or death." *See Devine v. State*, 786 S.W.2d 268, 270-71 (Tex. Crim. App. 1989). Arzola specifically contends that the statement "I should kill your bitch ass and let your daughter watch you suffer" does not convey an imminent threat, but rather conveys a threat to do harm some

8

time in the future, because the word "should" is a verb used to describe future or past events. However, Arzola's inclusion of "and let your daughter watch you suffer" indicates that Lane's daughter might have been able to witness whatever act Arzola was threatening; Lane's daughter was present at the house at the time of the incident. This evidence was clearly sufficient to support the finding of an imminent threat under *Devine. See id.*

We conclude that this evidence was legally sufficient to establish that the knife was a deadly weapon and, considering the surrounding circumstances, it was legally sufficient to establish that Arzola intentionally or knowingly threatened Lane with imminent bodily injury. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2).

Moreover, we find that the evidence was factually sufficient to support the verdict. *See Watson*, 204 S.W.3d at 414. Considering the differing accounts of Lane and Arzola, the trial court's decision does not appear to be manifestly unjust. *See id*. Officers Reynolds and Scott both testified that Lane looked distressed when they arrived and that Arzola became agitated and tried to interfere with Lane when she was talking with them. Viewing the evidence from a neutral standpoint, we cannot say that the judge's verdict on this count seems clearly wrong or manifestly unjust. *See id.* Finally, when considering the conflicting testimony, Arzola's conviction of aggravated assault by threat against Lane was not against the great weight and preponderance of the evidence. *See id.* Accordingly, Arzola's third and fourth issues are overruled.

## IV. CONCLUSION

We affirm the judgment of the trial court on both counts.

_____
DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 7th day of August, 2008.

9