**Opinion issued December 10, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00298-CR

———————————

**BELINDA DAWN TIDWELL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Case No. 1267425**

---

## MEMORANDUM OPINION

A jury convicted appellant Belinda Dawn Tidwell of the second degree

felony offense of aggravated assault for throwing muriatic acid on the complainant,

Mary Roberson. *See* TEX. PENAL CODE ANN. § 22.02 (West Supp. 2013). The jury

assessed Tidwell's punishment at eight years' incarceration, probated, and a $5,000 fine. In her sole issue on appeal, Tidwell argues that the trial court erred in denying her request to submit the lesser-included offense of misdemeanor assault. We affirm.

## Background

John Roberson and Tidwell were divorced and had a custody agreement that permitted John to pick up their daughter from Tidwell at 3:00 p.m. on Thursday afternoons. John and Tidwell's relationship was contentious, and he typically brought another person to Thursday afternoon pickups to act as a witness for any incident that might occur. John's usual practice was to wait in his car until his daughter came out of the house at 3:00 p.m.

On May 27, 2010, John brought his wife, Mary, to the regularly-scheduled 3:00 p.m. pickup. They arrived a few minutes early, waited in the car, and then honked the horn at 3:00 p.m. After waiting a few minutes longer, Mary walked to the front door. Mary had a practice of recording interactions with Tidwell and used her phone to record the encounter that day. After Mary knocked on the front door, Tidwell opened it and threw acid onto Mary's face and chest. Mary testified that Tidwell looked directly at her before throwing the acid. Mary was wearing sunglasses, which shielded her eyes from the acid.

2

Tidwell testified that she was using muriatic acid to clean the outside of the chimney, did not hear Mary knocking at the door, and did not expect that anyone would be standing outside the door where she threw the acid. Tidwell testified that she had placed yellow crime scene tape outside the house to prevent anyone from going in the area where she was using the acid. She also testified that she threw the acid out the door because it had started to smoke as she was carrying it in a bucket through the house. She hurriedly moved to the front door and threw the contents out, with her face turned away from the door to avoid inhaling the fumes.

Michael Sieck, the Harris County police sergeant with whom Tidwell lived, also testified that yellow crime scene tape had been put up outside the house as a warning to potential passersby. But Mary testified that she did not see any yellow crime scene tape.

Mary's treating physician testified that muriatic acid is caustic and "can damage any exposed skin, eyes, mouth, anything." In Mary's case, it caused a chemical burn, with swelling around her mouth and lips. He further testified that if inhaled, "it could cause serious injuries to the lungs with complications that would ensue," and that if Mary had not been wearing sunglasses at the time of the incident, it is likely that the acid would have caused serious, possibly permanent, damage to Mary's eyes. He testified that although there was no serious bodily

injury to Mary, in his opinion throwing muriatic acid onto another person "is capable of causing death or serious bodily injury."

The complaint alleged that Tidwell "unlawfully intentionally and knowingly cause[d] bodily injury to [Mary] by using a deadly weapon, namely MURIATIC ACID." The charge proposed by the trial court instructed the jury that:

> A person commits the offense of assault if the person intentionally or knowingly causes bodily injury to another.
>
> A person commits the offense of aggravated assault if the person commits assault, as hereinbefore defined, and the person uses or exhibits a deadly weapon during the commission of the assault.
>
> "Deadly weapon" means anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

At the charge conference, Tidwell requested an instruction on the lesser-included offense of misdemeanor assault. Counsel argued that "if the jury doesn't believe that the acid was used in a manner where it would be a deadly weapon but injury was caused anyhow, then if [the jurors] don't believe that, it would be a misdemeanor Class A assault and not aggravated assault." The trial court denied Tidwell's request. The jury convicted Tidwell of aggravated assault, and Tidwell appealed.

4

## Discussion

In her sole point of error, Tidwell contends that the trial court erred by denying her request to instruct the jury on the lesser-included offense of misdemeanor assault.

## A. Applicable Law

An offense qualifies as a lesser-included offense of the charged offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006). We employ a two-pronged test in determining whether a defendant is entitled to an instruction on a lesser-included offense. *See Ex Parte Watson*, 306 S.W.3d 259, 262–63 (Tex. Crim. App. 2009); *see also Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007). The first prong requires the court to use the "cognate pleadings" approach to determine if an offense is a lesser-included offense of another offense. *See Watson*, 306 S.W.3d at 271. The first prong is met if the indictment for the greater-inclusive offense either: "(1) alleges all of the elements of the lesser-

5

included offense, or (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced." *Id.* at 273. This inquiry is a question of law. *Hall*, 225 S.W.3d at 535.

The second prong asks whether there is evidence that supports submission of the lesser-included offense. *Hall*, 225 S.W.3d at 536. "A defendant is entitled to a requested instruction on a lesser-included offense where . . . there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense." *Id.* (quoting *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)). "In other words, the evidence must establish the lesser-included offense as 'a valid, rational alternative to the charged offense.'" *Id.* (quoting *Forest v. State*, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999)). Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a charge of a lesser-included offense, but it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. *Id.* (quoting *Bignall*, 887 S.W.2d at 23); *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997) (citing *Bignall*, 887 S.W.2d at 24). Rather, "there must be some evidence directly germane to a lesser-included offense for the factfinder to

6

consider before an instruction on a lesser-included offense is warranted." *Skinner*, 956 S.W.2d at 543 (citing *Bignall*, 887 S.W.2d at 24).

When reviewing a trial court's decision to deny a requested instruction for a lesser-included offense, we consider the charged offense, the statutory elements of the lesser offense, and the evidence actually presented at trial. *Hayward v. State*, 158 S.W.3d 476, 478 (Tex. Crim. App. 2005) (citing *Jacob v. State*, 892 S.W.2d 905, 907–08 (Tex. Crim. App. 1995)). "The credibility of the evidence, and whether it conflicts with other evidence, must not be considered in deciding whether the charge on the lesser-included offense should be given." *Dobbins v. State*, 228 S.W.3d 761, 768 (Tex. App.—Houston [14th Dist.] 2007, pet. dism'd) (citing *Saunders v. State*, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992)). If we find error and the appellant properly objected to the jury charge, we employ the "some harm" analysis. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc).

**B. Analysis**

The elements of misdemeanor assault are:

(1) intentionally, knowingly, or recklessly caus[ing] bodily injury to another, including the person's spouse;

(2) intentionally or knowingly threaten[ing] another with imminent bodily injury, including the person's spouse; or

7

>    (3) intentionally or knowingly caus[ing] physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

TEX. PENAL CODE ANN. § 22.01 (West Supp. 2013). The offense of aggravated assault occurs when "the person commits assault as defined in § 22.01 and the person: (1) causes serious bodily injury to another, including the person's spouse; or (2) uses or exhibits a deadly weapon during the commission of the assault." TEX. PENAL CODE ANN. § 22.02(a) (West Supp. 2013). A "deadly weapon" is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West 2012).

Here, the first prong of the two-prong analysis is satisfied because the greater-included offense—aggravated assault—alleges all of the elements of the lesser-included offense, assault. *See Barnett v. State*, 344 S.W.3d 6, 15 (Tex. App.—Texarkana 2011, pet. ref'd) (concluding that "[a]ssault is a lesser included offense of aggravated assault").

But, to meet the second prong, Tidwell must demonstrate that the record contains some evidence "directly germane" to the commission of the lesser-included offense of assault. In other words, Tidwell must show that a rational jury could find that if she is guilty, she is guilty only of misdemeanor assault. *See Hall*, 225 S.W.3d at 536 (quoting *Bignall*, 887 S.W.2d at 23). Tidwell does not dispute

8

that the acid was capable of causing death or serious bodily injury—she admitted that "there was certainly evidence that [she] used an object (acid) that was capable of causing death or serious bodily injury."  Instead, Tidwell contends there is evidence that she was guilty of only misdemeanor assault because there was evidence that she did not know another person "was anywhere in harm's way" when she threw the acid out the door.

Citing *McCain v. State*, Tidwell argues that an object only qualifies as a deadly weapon if the actor intends its use in a way that would affect another person.  Here, there was evidence that Tidwell did not know Mary was outside the door, and this, Tidwell argues, is evidence that the acid was not a deadly weapon. We believe *McCain* itself compels us to reject Tidwell's contention.  *McCain v. State* noted:

> The statute [defining "deadly weapon"] does not say "anything that in the manner of its use or intended use causes death or serious bodily injury."  Instead the statute provides that a deadly weapon is "anything that in the manner of its use or intended use is *capable* of causing death or serious bodily injury." § 1.07(a)(17)(B) (emphasis added).  The provision's plain language does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury.  The placement of the word "capable" in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force.

*McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (en banc) (citing *Tisdale v. State*, 686 S.W.2d 110, 114–115 (Tex. Crim. App. 1984)).

9

*McCain* explicitly holds that the plain language of the provision defining deadly weapon "does not require that the actor actually intend death or serious bodily injury." *Id.* Rather, the statute includes the word "capable" to "cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force." *Id.*

Thus, whether Tidwell intended or expected to harm another by her use of the muriatic acid does not determine whether the acid was a deadly weapon. *See id.* Because Tidwell conceded throwing the muriatic acid, which the doctor testified was capable of causing serious bodily injury, there was no evidence upon which a rational jury could find that Tidwell did not use a deadly weapon in the commission of the assault. *See Barnett*, 344 S.W.3d at 16 (concluding there was no evidence from which rational jury could convict on lesser-included offense of assault instead of aggravated assault where evidence did not negate allegation that appellant used deadly weapon during assault). Accordingly, the trial court did not err in refusing to instruct the jury on the lesser-included offense of assault. We overrule the appellant's sole point of error.

## Conclusion

We affirm the judgment of the trial court.


Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish.   TEX. R. APP. P. 47.2(b).

11